## PEOPLE v WALKER

Docket No. 68557. Submitted December 17, 1984, at Lansing.—Decided August 23, 1985.

Stanley W. Walker was convicted of first-degree criminal sexual conduct, Lenawee Circuit Court, Rex B. Martin, J. Defendant appealed. *Held:*

1. The trial court erred in allowing the mother of the minor child victim to testify, under the tender years exception to the hearsay rule, as to what the victim had told her regarding the alleged sexual act. The tender years exception did not survive the adoption of the Michigan Rules of Evidence. In addition, the mother's testimony did not fall within any of the hearsay exceptions recognized in MRE 803.

2. Under the circumstances of this case it was error to allow the prosecution to inquire, over objection, of the defendant's wife why she did not come forward with an alibi prior to trial. Such an inquiry is permissible only in limited circumstances which were not present in this case.

3. The character of the complainant was improperly attacked by a witness who testified only to his own personal experience and observation, rather than to the complainant's reputation in the community.

4. The prosecution may not, without proper foundation, create the illusion that witnesses are being intimidated by the defense.

5. The trial court's instructions to the jury regarding sexual penetration was capable of being misunderstood. If the defendant is tried again the trial court should use the statutory definition of sexual penetration.

Reversed and remanded.

REFERENCES

Am Jur 2d, Evidence §§ 180 *et seq.,* 493 *et seq.*

Am Jur 2d, Witnesses §§ 636 *et seq.*

Necessity and admissibility of expert testimony as to credibility of witnesses. 20 ALR3d 684.

See also the annotations in the ALR3d/4th Quick Index under Alibi; Hearsay; "Tender Years Doctrine".

1. EVIDENCE — RULES OF EVIDENCE — HEARSAY — TENDER YEARS
   EXCEPTION.
   The "tender years exception" to the hearsay rule did not survive
   the adoption of the Michigan Rules of Evidence.

2. WITNESSES — ALIBI WITNESSES — FAILURE TO COME FORWARD.
   The credibility of an alibi witness may, in certain circumstances,
   be impeached by questioning his or her failure to come forward
   with the alibi prior to trial; such impeachment is proper where
   it would have been natural for the witness to have come
   forward earlier if the facts were in accordance with the wit-
   ness's testimony.

3. WITNESSES — CHARACTER OF WITNESS — REPUTATION.
   The character of a witness may be attacked or supported only by
   evidence of his reputation for truthfulness or untruthfulness in
   the community; a character witness may not testify to his own
   personal experience and observation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Nathan T. Fairchild,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Herb Jordan),* for defendant on appeal.

Before: WAHLS, P.J., and D. E. HOLBROOK, JR., and C. A. WICKENS,* JJ.

PER CURIAM. On September 29, 1982, defendant was convicted by a jury of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). On October 21, 1982, defendant was sentenced to from 15 to 60 years imprisonment and now appeals as of right.

The complainant testified that in mid-October, 1981, defendant had either tried to place or did place defendant's penis into complainant's mouth. The complainant also testified that defendant had given him money to play video games and that,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

after the alleged criminal sexual conduct occurred, complainant's mother wanted to know where complainant obtained the money. At that point, complainant told his mother what had happened at defendant's apartment regarding the criminal act in question. The next morning, complainant and his mother went to the authorities to explain what defendant had done with complainant.

Under cross-examination, the complainant's account of what had happened changed. His testimony was likewise impeached with prior inconsistent statements and with evidence of three prior juvenile larceny convictions.

Complainant's mother testified that one day in mid-October, 1981, complainant arrived home in the late afternoon in possession of a couple of dollar bills. She asked complainant where he had obtained the money and he replied that a guy had given it to him. She again asked complainant who had given him the money and complainant replied that defendant had given it to him. At that point complainant asked his mother whether he would be punished. She informed complainant that he would not be punished, "[b]ut tell me whatever you got to tell me". So complainant "proceeded then to telling [sic] me about what [defendant] had done to him. * * * He said that he carried some stuff up, a radio upstairs to his apartment, and he said that [defendant] was doing some nasty things to him, but he wouldn't specify what." She kept asking questions of complainant until he finally said that defendant "had put his hand on him on his privates".

Michael Mohler, a school social worker who counselled complainant, also testified. The prosecution used Mohler for the purpose of rehabilitating complainant's testimony which had been impeached by prior inconsistent statements. Mohler

testified over objection that the complainant was an emotionally impaired and learning disabled child. He stated that the complainant had trouble with dates and times, and had no concept of the sequence in which events happened. He also stated, however, that complainant's recall of events was quite accurate. In addition, if a painful question was asked of complainant, complainant would initially avoid the question with a lie, but complainant would eventually be truthful if pressed. Mohler finally explained that complainant had always been truthful with him.

Defendant's wife, Alberta Walker, established an alibi for defendant. She testified that on Sunday, October 11, 1981, the day the alleged incident occurred, defendant was with her all day. She stated that, together, they got their children ready for church, went to dinner at approximately 3:00 p.m., and, thereafter, they walked to the grocery store and watched television. During cross-examination, the prosecution inquired of defendant's wife why she had not approached the police and told them of this alibi. She responded by saying that "I left that up to his lawyer" and that "I didn't know I had to [tell the authorities about the alibi]." Over objection, the trial court ruled that this was proper cross-examination.

Defendant testified in his own behalf that on October 8, 1981, complainant had helped him carry the radio up to his apartment and that nothing unusual had happened between them. He also explained that on October 11, 1981, the day this incident allegedly occurred, defendant was with his wife just about all day.

In its charge to the jury, the trial court instructed that the prosecution must prove the elements of the offense beyond a reasonable doubt. It explained that one of the elements of this offense

is that defendant engaged in an oral sexual act with the complainant. The court then defined a sexual act as involving "the contact between the mouth of one party and the sex organ of the other. As alleged in this case, a sexual act was committed by contact of the mouth of the complainant, of the young boy, with the sex organ of the defendant". Later, in reference to the form of the verdict, the court informed the jury that all twelve of its membership had to be convinced beyond a reasonable doubt that defendant had "placed his penis in this boy's mouth".

On appeal, defendant argues that the trial court erred when it allowed the complainant's mother to testify under the tender years exception to the hearsay rule as to what the complainant had reported to her on October 11, 1981, regarding this alleged incident. We agree and reverse on this issue.

In *People v Kreiner*, 415 Mich 372, 377; 329 NW2d 716 (1982), *reh den* 417 Mich 1104 (1983), the Supreme Court ruled that the so-called tender years exception did not survive the adoption of the Michigan Rules of Evidence. Defendant's trial was conducted after the adoption and effective date of the rules of evidence. Accordingly, complainant's mother's testimony about statements made to her by complainant was objectionable on hearsay grounds and, from our review of the record, none of the exceptions outlined in MRE 803 apply. Therefore, we are constrained to reverse defendant's conviction. The issue in defendant's trial was one of credibility; therefore, we cannot say that this error was harmless.

We address some of defendant's remaining claims of error to avoid their possible recurrence in the event defendant is retried for this offense.

First, the prosecution may not inquire of defen-

dant's wife, over proper objection, why did she not come forward with this alibi earlier. Although it is true that the credibility of an alibi witness may in limited circumstances be impeached concerning his or her failure to come forward with the alibi prior to trial, see, *e.g., People v Diaz,* 98 Mich App 675, 682-683; 296 NW2d 337 (1980), such limited circumstances did not exist in this case. In other words, in order to impeach an alibi witness with a question why he or she did not come forward earlier, it must have been natural for the witness to do so if the facts were in accordance with his or her testimony. In this case, it was unknown when the complainant was actually molested by defendant. The date of October 11, 1981, was targeted as the date of the offense only after the proceedings were instituted against defendant. Therefore, it would not have been natural for defendant's wife to come forward with evidence pertaining to what she and her husband did on Sunday, October 11, 1981.

Second, the prosecution may not, over proper objection, use witness Mohler to rehabilitate the complainant's credibility after the complainant's testimony is impeached with prior inconsistent statements as was done herein.

Under MRE 608, the character of a witness may be attacked or supported only by evidence of his reputation for truthfulness or untruthfulness in the community. Mohler did not indicate that he knew of complainant's reputation in this regard. A character witness cannot testify to his own personal experience and observation, but must confine his testimony to what a person's reputation is in the community. Mohler, however, testified about his personal contacts with the complainant, rather than complainant's reputation in the community.

Mohler's testimony must be limited to explain-

ing to the jury why complainant was unable to recall exact dates. This is the area in which complainant's testimony was impeached by defense counsel. Furthermore, under these circumstances, Mohler's testimony is only permissible if Mohler is presented as a qualified expert witness under MRE 702.

Third, the prosecution may not inquire of witness Michael Donnelly whether he is afraid of either defendant or defendant's family. Absent any foundation in this regard, either through direct examination or during proper voir dire, the prosecution cannot be permitted to create the illusion by innuendo that witnesses are being intimidated by the defense. *People v Osborne,* 75 Mich App 600, 602; 256 NW2d 45 (1977), *lv den* 402 Mich 810 (1977).

Fourth, and finally, we address defendant's claim that the trial court incorrectly instructed the jury when it explained that, "[t]he first element is that the Defendant engaged in an oral sexual act with the complainant. That is, that the act involved the contact between the mouth of one party and the sex organ of the other. As alleged in this case, a sexual act was committed by contact of the mouth of the complainant, of the young boy, with the sex organ of the Defendant".

MCL 750.520b(1)(a); MSA 28.788(2)(a) provides:

"A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

"(a) That other person is under 13 years of age."

The definition of "sexual penetration" is found in MCL 750.520a(l); MSA 28.788(1)(l) and is stated as follows:

" 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

Under this definition, it is conceivable that "oral sex" would be included within the concept of sexual penetration. However, it is better to use the terms commonly understood as being oral sex rather than to provide a different definition therefor. In other words, "cunnilingus" and "fellatio" are express terms included in the statute.[1] When using the term "oral sex", either cunnilingus or fellatio is usually the concept meant to be addressed. Accordingly, on remand, the trial court should give the statutory definition of "sexual penetration" if defendant is retried for first-degree criminal sexual conduct. See MCL 750.520a(l); MSA 28.788(1)(l). In this way the trial court will avoid any misunderstanding as to what elements the prosecution must prove beyond a reasonable doubt.

Reversed and remanded for proceedings consistent with this opinion.

[1] "Fellatio" is the oral stimulation of the male sex organ and "cunnilingus" is the oral stimulation of the female sex organ. Perkins, Criminal Law (2d ed), p 390. See also Black's Law Dictionary (4th ed), pp 456, 743; Webster's Seventh New Collegiate Dictionary, pp 203, 307; The American Heritage Dictionary (New College ed), pp 322, 483; Random House College Dictionary (Revised ed), pp 326, 485.