PEOPLE v BROWNRIDGE

Docket No. 183507. Submitted January 7, 1997, at Grand Rapids. Decided September 2, 1997, at 9:20 A.M. Leave to appeal sought.

Glen D. Brownridge was convicted by a jury in the St. Joseph Circuit Court, Meyer Warshawsky, J., of conspiracy to commit arson and arson of a dwelling and was sentenced to eleven months' imprisonment and ordered to pay restitution. The defendant appealed.

The Court of Appeals *held*:

1. The court abused its discretion in limiting the defendant's presentation of evidence regarding the character of Sergeant Earl Stark, the lead police investigator in this matter. The error warrants the reversal of the defendant's convictions. The court also abused its discretion in limiting the cross-examination of Stark with regard to a specific instance in which he allegedly falsified an affidavit in support of an arrest warrant in an unrelated case. MRE 608(b) permits such cross-examination. The excluded evidence had significant probative value and its omission may well have affected the outcome of the trial.

2. The defendant's argument that the prosecutor had a duty to disclose that, at the time of the trial, one of the prosecution's witnesses, Deanna Turner, the wife of Raymond Turner, the man who allegedly set the fire, was under investigation for felony welfare fraud is moot, because the defendant's convictions must be reversed. On retrial, the defendant may inquire into the circumstances surrounding the charges against the witness.

3. The prosecutor made improper remarks regarding the defendant's failure to testify.

4. The court did not err in permitting the prosecution to introduce, during rebuttal, certain prior consistent statements made by Deanna Turner. The requirements of MRE 801(d)(1)(B) were satisfied. The admission of the statements through the testimony of Deanna's stepmother was not prohibited. The admission of evidence of a prior consistent statement through a third party was appropriate. The court's decision to admit this rebuttal evidence was a proper exercise of its discretion.

5. The trial court erred in admitting under MRE 804(b)(3) the testimony of certain witnesses regarding statements made by Raymond

Turner, because, at the time the statements were made, they were not against Turner's penal interest. However, the testimony regarding Turner's statements may be admissible under MRE 803(3) as a present sense impression.

6. Deanna Turner's testimony regarding Raymond Turner's statements were not barred by the spousal communication privilege contained in MCL 600.2162(2); MSA 27A.2162(2). Deanna waived the privilege and Raymond, who was found dead two days after the fire, was unable to object because of his death.

7. The defendant's right to be free from double jeopardy was not violated as a result of his conviction of and punishment for both arson and conspiracy to commit arson.

8. The defendant's conspiracy conviction does not violate "Wharton's Rule," which does not apply if the underlying offense, such as arson, could logically be accomplished by a single individual.

9. The prosecution failed to preserve for appellate review the issue whether the information may be amended to add a count of possession of a firearm during the commission of a felony.

Reversed and remanded.

SMOLENSKI, J., dissenting in part, stated that the defendant's convictions and sentence should be affirmed. The court's rulings regarding the admission of evidence concerning Earl Stark's credibility did not constitute an abuse of discretion or, if error, did not constitute error requiring reversal. The court did not abuse its discretion in denying the defendant's motion for a mistrial that was based on the failure to disclose that Deanna Turner was under investigation for welfare fraud. There were no charges pending against her at the time of the defendant's first or second trial. The defendant was not denied a fair and impartial trial as a result of any remarks made by the prosecutor.

1. WITNESSES — EVIDENCE — SPECIFIC INSTANCES OF CONDUCT — OPINION AND REPUTATION EVIDENCE OF CHARACTER.

Although MRE 608(b) prohibits the admission of extrinsic evidence regarding specific instances of conduct of a witness for the purpose of attacking or supporting the witness' credibility, the witness may be cross-examined with regard to such matters; MRE 608(a) permits a witness to offer opinion evidence regarding another witness' credibility and to testify regarding the other witness' reputation for truthfulness.

2. WITNESSES — PRIOR CONSISTENT STATEMENTS.

MRE 801(d)(1)(B) does not prohibit a third party from testifying with regard to another witness' prior consistent statement; a prior statement need not be introduced during the witness' direct or redirect

testimony in order for the right to cross-examination required by the rule to be exercised; the admission of a prior consistent statement through a third party is appropriate where the requirements of the rule are satisfied.

3. EVIDENCE — HEARSAY — EXCEPTIONS — STATEMENTS AGAINST PENAL INTEREST.

A declaration must be against the declarant's penal interest at the time the declaration is made in order to qualify under the exception to the hearsay rule as a statement against penal interest (MRE 804[b][3]).

4. EVIDENCE — HEARSAY — COCONSPIRATORS.

Hearsay statements of a coconspirator are not admissible under the exception to the hearsay rule regarding statements of a coconspirator unless and until the existence of the conspiracy is shown by independent evidence (MRE 801[d][2][E]).

5. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — EVIDENCE.

Reversal of a defendant's conviction is not required as a result of a deficiency in the evidence at the preliminary examination where the defendant received a fair trial and was not otherwise prejudiced by the error.

6. CONSPIRACY — DOUBLE JEOPARDY — ARSON — CONSPIRACY TO COMMIT ARSON.

A defendant's separate convictions of and punishment for both conspiracy to commit arson and arson do not constitute double jeopardy; conspiracy is a crime separate and distinct from the substantive crime that is its object; the guilt or innocence of a conspirator does not depend on the accomplishment of the goals of the conspiracy (MCL 750.72, 750.157a; MSA 28.267, 28.354[1]).

7. CONSPIRACY — WHARTON'S RULE.

Wharton's Rule provides that an agreement by two persons to commit a crime cannot be prosecuted as a conspiracy where the target crime requires the participation of two persons; where the offense logically can be accomplished by a single individual, the rule does not apply.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey C. Middleton*, Prosecuting Attorney, and *Douglas K. Fisher*, Chief Assistant Prosecuting Attorney, for the people.

*Bellanca, Beattie and De Lisle, P.C.* (by *Frank D. Eaman* and *Lawrence J. Paolucci*), for the defendant.

Before: NEFF, P.J., and SMOLENSKI and D. A. ROBERSON*, JJ.

NEFF, P.J. Defendant appeals as of right his convictions of conspiracy to commit arson, MCL 750.157a; MSA 28.354(1), and arson of a dwelling, MCL 750.72; MSA 28.267, for which he was sentenced to eleven months' imprisonment and ordered to pay restitution. We reverse and remand for a new trial.

I

The prosecutor's theory of the case was that defendant induced Raymond Turner (hereafter Turner) to set fire to a house in Three Rivers that defendant was purchasing on land contract. The fire chief and a state police fire marshal established that the fire was arson, probably started by flammable liquids on the front porch. Turner's body was found in a river near the house two days after the fire. A pathologist established the cause of death as drowning.

Turner's wife, Deanna Turner, testified that on the day before the fire Turner drove with defendant to defendant's house for a conversation, and returned approximately fifteen minutes later. Turner told Deanna that defendant had asked him to burn down a house in Three Rivers, and that Turner was going to do it because he needed the money. Deanna testified that Turner told her that defendant had given him money to buy gasoline. Deanna testified that she

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

tried, unsuccessfully, to dissuade Turner from setting
the fire.

Turner's brother, Scott Turner, testified pursuant to
an agreement with the prosecutor in which the thirty
years' imprisonment he faced as an habitual offender
for his part in the commission of the arson would be
reduced to two years' probation. Scott testified that
on the night of the fire, Turner told him that he
needed help burning down a house for the insurance
money. Scott testified that when he could not talk
Turner out of committing the arson, he drove Turner
toward defendant's house and dropped him off.

Sergeant Earl Stark of the Three Rivers Police
Department testified regarding his investigation of the
fire and the finding of Turner's body. Stark testified
that he obtained statements from both Deanna and
Scott, both of which implicated defendant in the
arson. At trial, the defense theory was that Stark, the
lead investigator, had a personal dislike for defendant
and that he threatened Scott into implicating defend-
ant and that Stark also convinced Deanna to accuse
defendant of asking Ray Turner to commit the arson.

II

Defendant argues that the trial court erred in refus-
ing to allow the defense to present evidence regard-
ing Stark's credibility. We find that the trial court
abused its discretion in limiting defendant's presenta-
tion of character evidence and that this error war-
rants reversal of defendant's convictions.

A

Stark testified on cross-examination that he had a
reputation for truthfulness. Defendant then sought to

challenge this testimony by asking Stark about a specific instance in which Stark allegedly falsified an affidavit in support of an arrest warrant in an unrelated case. The trial court refused to permit this line of questioning.

Defendant also sought to present the testimony of Michael Costello, one of Stark's fellow officers. Costello would have rebutted Stark's testimony that Stark has a reputation for truthfulness in the community and would have described the circumstances surrounding the alleged false affidavit. Costello also would have criticized Stark's investigative methods, particularly those surrounding his obtaining of Scott's confession and his interview with Deanna. The trial court excluded Costello's proposed testimony.

B

At issue here is the applicability of MRE 608, which provides in relevant part as follows:

> (a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> (b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or

untruthfulness of another witness as to which character the
witness being cross-examined has testified.

We have reviewed carefully Costello's[1] proposed
testimony and find that the trial court's decision to
exclude it was an abuse of discretion. Under MRE
608(a), it was appropriate for Costello to offer opin-
ion evidence regarding Stark's credibility and to tes-
tify regarding Stark's reputation for truthfulness.

We further find that it was an abuse of discretion to
limit defendant's cross-examination of Stark regarding
the alleged false affidavit. Although MRE 608(b) pro-
hibits the admission of extrinsic evidence regarding
specific instances of Stark's conduct, the rule clearly
permits the cross-examination of Stark regarding
such matters.

C

The prosecution concedes that Costello's testimony
would have been relevant pursuant to rule 608(a). It
insists, however, that the testimony was properly
excluded under MRE 403, which provides:

> Although relevant, evidence may be excluded if its proba-
> tive value is substantially outweighed by the danger of
> unfair prejudice, confusion of the issues, or misleading the
> jury, or by considerations of undue delay, waste of time, or
> needless presentation of cumulative evidence.

The prosecution suggests that because Stark was not
an eyewitness to the alleged offenses, his role was
"merely investigative" and his "personal credibility is
tangential at best."

---

[1] Costello's proposed testimony was preserved in a separate record.

This argument misses the mark. Although not an eyewitness to the alleged arson, Stark was instrumental in gathering evidence and interviewing witnesses. Stark obtained both Scott Turner's confession and Deanna Turner's statement, the veracity of which was hotly contested at trial. Stark's method of gathering evidence was at issue here; thus, the excluded evidence had significant probative value and its omission may well have affected the outcome of the trial. Accordingly, defendant is entitled to a reversal of his convictions and a new trial. *People v George*, 213 Mich App 632, 635; 540 NW2d 487 (1995).[2]

III

Defendant also argues that the prosecutor had a duty to disclose that, at the time of trial, Deanna was under investigation for felony welfare fraud. An arrest warrant was authorized after defendant's first trial, which ended in a mistrial, but not served until after defendant was convicted in a second trial. After defendant was sentenced, the charges against Deanna were reduced from two felonies to a single misdemeanor pursuant to a plea agreement and she was sentenced to twenty-four months' probation.

On appeal, defendant asserts that the prosecutor's handling of the fraud charges against Deanna was instrumental in inducing her to testify against defend-

---

[2] We affirm the trial court's decision to exclude Costello's opinion regarding the propriety of Stark's investigative methods. The circumstances surrounding Stark's obtaining the statements, and his alleged bias, were placed before the jury for its consideration. To permit Costello to criticize Stark's technique in interviewing witnesses would open the floodgates for an endless parade of law enforcement witnesses, each with his own opinion regarding appropriate investigating, interrogating, and reporting methods.

ant and that the prosecutor violated the disclosure order by not revealing the investigation. Because we reverse defendant's convictions, this issue is moot. On retrial, defendant will be able to inquire into the circumstances surrounding the charges against Deanna.

IV

Defendant argues that the prosecutor made improper remarks during rebuttal argument. We find no error in the prosecutor's comment that the police reports were not evidence. However, we agree with defendant that the following remark was improper:

> He [defense counsel] says where is the witness that saw Deanna and Raymond at the garage. *The witness was [defendant] himself.* [Emphasis added.]

Although we reverse defendant's convictions on other grounds, we note that prosecutors may not comment on a defendant's failure to testify. See *People v Perry*, 218 Mich App 520, 538; 554 NW2d 362 (1996). We caution prosecutors to refrain from making such remarks in the future. See *People v Guenther*, 188 Mich App 174, 178; 469 NW2d 59 (1991).

V

Defendant next argues that the trial court erred in permitting the prosecution to introduce, during rebuttal, certain prior consistent statements made by Deanna. Because this issue may arise on retrial, we will address it briefly.

A

Deanna testified on direct examination that before she spoke with Stark, she told her father the facts

surrounding Turner's disappearance. The prosecutor did not elicit the details of Deanna's conversation with her father. On cross-examination, defense counsel asked Deanna the following questions in support of the theory that Stark, who disliked defendant, had improperly influenced Deanna to fabricate her accusations against defendant.[3]

> Q. And when the two of you were alone in this car—you and Sergeant Stark—did Sergeant Stark tell you that he wanted some information about Glen Brownridge and whether he was involved in this?
>
> A. I don't recall.
>
> Q. While you were alone in this car with Sergeant Stark did he tell you that he did not like Glen Brownridge?
>
> A. No.
>
> Q. Did Sergeant Stark tell you that he wanted your cooperation in bringing this case against Glen Brownridge while you were in the car?

---

[3] This theory was emphasized during defendant's closing argument:

> But when thinking about whether you should rely on her testimony to reach a verdict, as the prosecutor asks you, ask yourself if you want to rely on a testimony of a witness who had four days, and two meetings with the police before the meeting with Sergeant Stark, when she could have told the truth — as she tells us now — about her husband's arson attempts. And she never told the truth. . . .

> \*     \*     \*

> Now she has a chance, however, when her family confronts her and summons the police, she's going to do what a person will do who's involved. She's going to deflect the blame on someone else. And Sergeant Stark in his private meeting with her in the van gives her an opportunity to cleanse her own guilt and come out clean herself because now she has a chance to be a witness against Glen and no fear for herself about prosecution for a false police report or anything else. And blaming it on somebody else can be very — emotional release of all of those feelings you feel. *And Sergeant Stark gave her that chance because he doesn't like Glen Brownridge.* [Emphasis added.]

*A.* I don't recall. I just told him what happened.

Over defendant's objection, the prosecutor was permitted on rebuttal to present the testimony of Constance Baker, Deanna's stepmother. Baker testified that she was a witness to the conversation between Deanna and her father. Baker testified that Deanna told her father that defendant had asked Turner to burn the house down for the insurance money. Baker also gave other details of this conversation that were consistent with Deanna's testimony at trial.

Defendant argues, as he did at trial, that a proper foundation was not laid for the admission of Baker's testimony, as required by MRE 801(d)(1)(B), and that her testimony was outside the proper scope of rebuttal. We disagree and find no error in the court's admission of Baker's testimony.

B

MRE 801(d)(1)(B) excludes from the definition of hearsay a prior statement of a witness when

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Baker's testimony fits squarely within this rule. Deanna testified at trial and was subject to cross-examination concerning her prior statement to her father. This prior statement was consistent with Deanna's testimony at trial and was offered to rebut the defense theory that Stark had convinced Deanna to testify that defendant asked Turner to burn the

house. Finally, Deanna's statement to her father took place before her initial meeting with Stark, thus preceding the alleged improper influence.

Defendant insists that the prosecutor should have first confronted Deanna with the contents of her prior consistent statement. Defendant posits that only then would Deanna have been "subject to cross-examination concerning the statement" as required by MRE 801(d)(1)(B). We disagree.

Nothing in MRE 801(d)(1)(B) prohibits a third party from testifying with regard to the declarant's prior statement. A prior statement need not be introduced during the witness' direct or redirect testimony in order for the right of cross-examination to be exercised. Here, both Deanna and Baker were in court and subject to cross-examination regarding their memories of past events and their motives to falsify, and Deanna could easily have been recalled after Baker's testimony. Where, as here, the requirements of MRE 801(d)(1)(B) are satisfied, the admission of a prior consistent statement through a third party is appropriate.[4]

C

Defendant also challenges the admission of Baker's testimony as being beyond the proper scope of rebuttal. We review the admission of rebuttal evidence for

---

[4] We note that our holding is in accord with the overwhelming majority of federal courts that have addressed the admissibility of prior consistent statements by a third party under FRE 801(d)(1)(B), which is identical to MRE 801(d)(1)(B). See *United States v Hebeka*, 25 F3d 287, 291-292 (CA 6, 1994) (every circuit that has addressed the issue, except the Seventh Circuit Court of Appeals, permits witnesses to testify about a third party's prior consistent statement).

a clear abuse of discretion. *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996).

The test of whether rebuttal evidence was properly admitted is whether it is properly responsive to evidence introduced or a theory developed by the defendant. *Id.* at 399. As demonstrated above, Baker's testimony was in response to the defense theory that Stark persuaded Deanna to implicate defendant in the arson. The trial court's decision to admit this rebuttal evidence was a proper exercise of its discretion.

VI

Defendant contends that the trial court erred in permitting Deanna and Scott to testify about Turner's statements implicating defendant in the scheme to burn down defendant's house. We address this issue because it may arise on retrial.

A

The trial court admitted Deanna's and Scott's testimony regarding Turner's statements as a statement against penal interest. Where, as here, the declarant is unavailable as a witness, MRE 804(b)(3) provides that the following is not excluded by the hearsay rule:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The trial court erred in admitting the statements at issue under MRE 804(b)(3) because, at the time the statements were made, they were not against Turner's penal interest. We have found no Michigan decision addressing the admissibility of declarations made before the alleged offense was committed, but two cases from other jurisdictions are instructive. In *State v Fredette*, 462 A2d 17 (Me, 1983), the declarant's statement, that he intended to accept money from the defendant to kill the defendant's husband, was determined to be not against his penal interest. At most, the statement reflected an intent to possibly commit a crime. *Id.* at 22

Likewise, in *Merritt v Chonowski*, 58 Ill App 3d 192; 373 NE2d 1060 (1978), a drunk driver's admission that he had consumed six mixed drinks was held to be inadmissible as a statement against penal interest because the driver "made his declaration before the accident occurred at which time he had no reason to believe that he was going to become liable for an injury to another person. The declaration must be against one's pecuniary interest *at the time the statement is made* or it fails to qualify as an exception to the hearsay rule." *Id.* at 196 (emphasis added).

In the present case, Turner's statements demonstrate an intent to commit a crime without anything more. Therefore, they were not statements against his penal interest at the time they were made.

B

The prosecution argues that even if the statements were inadmissible under MRE 804(b)(3), they were admissible under at least two other theories: as a

statement of a coconspirator or as a present sense impression.

1

To the extent that Scott was an accomplice with Turner in carrying out the arson, the statement might have been admissible as a statement of a coconspirator under MRE 801(d)(2)(E). However, as defendant correctly notes, hearsay statements of a coconspirator are not admissible as an exception to the hearsay rule unless and until the existence of the conspiracy is shown by independent evidence. *People v Vega*, 413 Mich 773, 780; 321 NW2d 675 (1982). This was not done in the present case.[5]

2

We agree with the prosecution, however, that Deanna's and Scott's testimony regarding Turner's statements to them may be admissible under MRE 803(3) as a present sense impression. This rule excepts from the hearsay rule "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . ."

Under this rule, hearsay statements are admissible to show that a declarant acted in accordance with his stated intention. Turner's declarations of intent to

---

[5] We further note that Scott's statements regarding what Turner told him about defendant's involvement in the arson were made to the police during extensive interrogation. Scott's willingness to testify to Turner's statements resulted in lenient treatment for himself. Thus, notwithstanding our analysis above, we find that Scott's statements about what Turner told him lack sufficient indicia of reliability to be admissible as an exception to the hearsay rule. See, generally, *People v Richardson*, 204 Mich App 71; 514 NW2d 503 (1994).

burn down defendant's house were certainly relevant, and, insofar as the statements had some bearing on the issue of defendant's conduct, they may properly be admitted. On retrial, therefore, the trial court should carefully examine each of the challenged hearsay statements and rule on the admissibility of each statement under MRE 803(3).

C

Defendant argues that Deanna's testimony regarding Turner's statements is barred by the spousal communication privilege contained in MCL 600.2162(2); MSA 27A.2162(2). We disagree. This privilege was waived where Deanna failed to object and testified for the prosecution at trial, and Turner was unable to object because of his death. See *Benson v Morgan*, 50 Mich 77, 79; 14 NW 705 (1883).

VII

Defendant's final argument on appeal is that he should not have been bound over on charges of both arson and conspiracy to commit arson and that his right to be free from double jeopardy was violated when he was convicted of both offenses. We disagree.

A

Defendant argues that it was an abuse of discretion to bind him over on the conspiracy charge because there was no independent evidence of a conspiracy. This argument is without merit because a deficiency in the evidence at the preliminary examination does not require reversal where the defendant received a fair trial and was not otherwise prejudiced by the error. *People v Hall*, 435 Mich 599, 600-601; 460 NW2d 520 (1990).

B

Defendant also argues that his convictions of both arson and conspiracy to commit arson violate his right to be free from double jeopardy. We disagree.

It is well settled that conspiracy is a crime separate and distinct from the substantive crime that is its object. *People v Sammons*, 191 Mich App 351, 374; 478 NW2d 901 (1991). The conspiracy statute punishes the planning of the offense and focuses upon the alleged " 'special dangers' " resulting from group action. *People v Wise*, 134 Mich App 82, 93; 351 NW2d 255 (1984) (citation omitted). " 'The guilt or innocence of a conspirator does not depend upon the accomplishment of the goals of the conspiracy.' " *Sammons, supra* at 374 (citation omitted). Accordingly, we conclude that defendant's separate convictions and punishment for both conspiracy to commit arson and arson do not constitute double jeopardy.

C

Defendant maintains that his conspiracy conviction violates "Wharton's Rule." Again, we disagree.

Wharton's Rule operates as a substantive limitation on the scope of the crime of conspiracy and provides that an agreement by two persons to commit a crime cannot be prosecuted as a conspiracy where the target crime requires the participation of two persons. *People v Weathersby*, 204 Mich App 98, 107; 514 NW2d 493 (1994). The applicability of the rule depends on the nature of the target offense: that is, the focus is on the elements of the crime rather than on the factual circumstances of the particular case. *People v Carter*, 415 Mich 558, 573; 330 NW2d 314 (1982). Thus, if the offense could logically be accomplished

by a single individual, Wharton's Rule does not apply. *Id.*

The substantive crime at issue here is arson, an offense that may be accomplished by a single individual. The fact that the arson in the present case may have been committed through the cooperation of defendant, Turner, and Scott is of no moment. Defendant's conviction of conspiracy to commit arson does not violate Wharton's Rule.

### VIII

The prosecution raises the following issues in its cross appeal:

### A

The prosecution argues that on retrial it should be permitted to amend the information and add a count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), based on the handgun discovered on Ray Turner's body. The prosecution sought to add this count before defendant's first trial. The trial court denied the motion, stating that it was not timely and would be unduly prejudicial to defendant because it was filed so long after the preliminary examination. The prosecution neither sought leave to appeal the trial court's ruling nor renewed this motion before defendant's second trial. Accordingly, we find that the prosecution has failed to preserve this issue for our consideration.

### B

The prosecution also challenges the trial court's scoring of offense variables 18 and 19. Because we reverse defendant's convictions, this issue is moot. However, we note that our Supreme Court has

recently held that a scoring error neither violates the law nor provides a cognizable claim for relief. *People v Mitchell*, 454 Mich 145, 176; 560 NW2d 600 (1997).

Reversed and remanded. We do not retain jurisdiction.

D. A. ROBERSON, J., concurred.

SMOLENSKI, J. *(concurring in part and dissenting in part)*. I concur in part and dissent in part. I would affirm defendant's convictions and sentence.

I

Except as otherwise stated in this opinion, I concur in the majority's statement of the facts.

II

I conclude that the trial court's rulings with respect to the admission of evidence concerning Earl Stark's credibility either did not constitute an abuse of discretion or, if error, did not constitute error requiring reversal. I would not reverse defendant's convictions on this ground.

I address defendant's arguments in turn. Defendant argues that the trial court erred under MRE 608(b) in refusing to allow defense counsel to examine both Stark and Michael Costello concerning a specific instance of Stark's conduct, i.e., Stark's alleged submission of a false affidavit in another case. I disagree.

MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court, if probative of truthfulness or*

*untruthfulness,* be inquired into on cross-examination of
the witness (1) concerning the witness' character for truth-
fulness or untruthfulness, or (2) concerning the character
for truthfulness or untruthfulness of another witness as to
which character the witness being cross-examined has testi-
fied. [Emphasis supplied.]

In this case, the separate record of Stark's and Cos-
tello's testimony indicates that the other case con-
cerned a rape that was alleged to have occurred at
defendant's house before it burned. In support of an
arrest warrant for the suspected rapist, Stark swore
in an affidavit that a tracking dog had followed the
tracks of the suspect in the direction of the suspect's
residence, which was located in the neighborhood of
defendant's house, but that before reaching the sus-
pect's residence the dog lost the track and was unable
to pick up the track again. During the separate record
of Costello's testimony, Costello testified that these
statements by Stark were false because the dog did
not go anywhere near the suspect's residence. How-
ever, during the prosecution's cross-examination of
Costello, Costello conceded that the affidavit did not
state that the dog had lost the track *upon* reaching
the suspect's house, but, rather, that the dog lost the
track *before* it reached the suspect's address. Costello
also acknowledged that, consistent with the affidavit,
the dog had actually traveled in the direction of the
suspect's residence for a short distance before losing
the track.

Where Costello's proposed testimony acknowl-
edged that Stark's affidavit was essentially consistent
with the dog's actions, I fail to understand how this
specific instance of conduct is particularly probative
of Stark's untruthfulness. Accordingly, I find no abuse

of discretion in the trial court's refusal to permit defense counsel to cross-examine Stark concerning this specific instance of conduct. I further find no abuse of discretion in the trial court's refusal to admit Costello's testimony concerning this incident, first, because, as indicated above, the incident was not particularly probative of untruthfulness, and, second, because Costello was not being cross-examined by defense counsel as required by MRE 608(b).

Next, defendant argues that the trial court erred under MRE 608(a) in refusing to allow Costello to give opinion testimony concerning Stark's character for untruthfulness. MRE 608(a) was amended in 1991 to permit attacks on a witness' credibility through the use of opinion testimony. See MRE 608(a), note regarding 1991 amendment; *People v George*, 213 Mich App 632, 634; 540 NW2d 487 (1995). In this case, the trial court relied on cases decided before the amendment to categorically rule that opinion testimony concerning Stark's character for untruthfulness was not admissible. This was clearly error. However, I would hold that Costello's opinion testimony could nevertheless properly have been precluded on another ground.

Stark provided virtually no direct evidence in this case. Rather, the prosecution's case was proved through the trial exhibits and the trial testimony of Deanna Turner and Scott Turner. I agree that Stark was instrumental in gathering evidence and interviewing witnesses and that his method of gathering evidence was made a significant issue at trial. Nevertheless, the record reveals that defense counsel was able to extensively explore both Stark's methods of gathering evidence as well as the credibility of Deanna's and Scott's trial testimony.

In particular, I note that neither a pretrial confession by Scott nor a pretrial statement by Deanna was admitted into evidence. Rather, a record of Stark's pretrial discussions with Scott and Deanna was contained in Stark's police reports and notes, and on tape. These items were not admitted into evidence. However, defense counsel extensively used discrepancies contained in Stark's police reports and notes, as well as other aspects of Stark's investigative methods, for the purpose of undermining and casting doubt on the trial testimony of Deanna and Scott, as well as Stark himself. In an effort to make sense of some of these discrepancies, Stark admitted on redirect examination that, with respect to his police report concerning Deanna, he had improperly waited a week before typing his report concerning his interview with Deanna and that he must have "co-mingled" information given him by Deanna along with other information he had obtained in the case. Defense counsel, of course, seized upon this testimony.

Thus, the record indicates that defendant had plentiful opportunities to explore the credibility of Deanna, Scott, and Stark. Further, defense counsel sought at every opportunity to shift the jury's focus and put Stark and his investigative methods on trial. The trial court's comments during trial reflect its constant concern with balancing defendant's right to a fair trial with issues of jury confusion. I would conclude that Costello's proffered opinion testimony could have been properly excluded under MRE 403 because, in light of the extensive attacks actually permitted on Stark, any probative value of the excluded opinion evidence was substantially outweighed by the danger of confusion of the issues or considerations of

needless presentation of cumulative evidence. Alternatively, I would use the same reasoning to conclude that the preclusion of Costello's proffered opinion testimony had a negligible effect on the jury's verdict and was, therefore, harmless. *People v Mateo*, 453 Mich 203, 221; 551 NW2d 891 (1996).

Next, defendant argues that the trial court erred under MRE 608(a) in refusing to allow Costello to testify regarding Stark's reputation for untruthfulness. I disagree.

MRE 608(a) provides that the credibility of a witness may be attacked by evidence of the witness' reputation for untruthfulness. In order for reputation evidence to be admissible, the character witness' testimony cannot be based on his own personal experience and observation, but, rather, must be based upon what he has heard other people in the subject's residential or business community say about the subject's reputation. *People v Bieri*, 153 Mich App 696, 712; 396 NW2d 506 (1986); *People v Walker*, 150 Mich App 597, 602; 389 NW2d 704 (1985). One's community can be either where one lives or works, and a reputation may be established wherever one interacts with others over a period. *Bieri, supra* at 713.

In this case, defense counsel sought to lay a foundation for the admission of Costello's reputation testimony by offering evidence of Costello's personal experiences with Stark, in particular the specific incident of Stark's alleged false affidavit. The trial court ruled that an inadequate foundation for Costello's reputation testimony had been laid where Costello's proposed testimony was devoid of any indication that it was based on what Costello had heard other persons say about Stark's reputation. In a last-ditch effort to

save Costello's proposed reputation testimony, defense counsel finally elicited Costello's testimony that several other fellow officers had communicated to him that Stark had a reputation for being untruthful. However, the trial court remained with its original ruling in light of Costello's concession on cross-examination that none of these officers, albeit out of fear, would come into court and testify that Stark was untruthful. In light of the paucity and contrived nature of the foundation laid for Costello's proposed reputation testimony, I conclude that the trial court's ruling with respect to this issue did not constitute an abuse of discretion.

Moreover, following trial, defendant moved for a new trial on this ground. The trial court denied defendant's motion. The trial court reasoned that to have permitted Costello to testify regarding Stark's reputation based on the statements of other police officers would have placed before the jury a lawsuit brought by Costello against several members of the police department. The trial court believed that Costello's reputation testimony, "instead of being enlightening for the jury, . . . would have confounded and confused them [sic] to get involved in Mr. Costello's argument with the city and with the police department in particular." I find no abuse of discretion with respect to this ruling. *People v Torres (On Remand)*, 222 Mich App 411, 415; 564 NW2d 149 (1997).

Finally, defendant argues that the trial court erred in excluding Costello's testimony concerning the propriety of Stark's investigative methods. However, I concur with the majority opinion that no error in this regard occurred.

III

Next, defendant argues that the prosecutor committed misconduct in failing to disclose that Deanna was under investigation for felony welfare fraud at the time of the trial. Defendant also raised this argument in his motion for a new trial below. After reviewing the documents submitted by defendant in support of his motion, the trial court denied the motion. The court reasoned that there was no evidence either that the prosecutor had surreptitiously held up Deanna's prosecution for the sake of improving his position in defendant's case or that the prosecutor had surreptitiously made a promise to Deanna and failed to disclose it on the record. I agree with the trial court. It is true, as argued by defendant, that pending charges may be admissible to establish a witness' interest in testifying. *People v Hall,* 174 Mich App 686, 691; 436 NW2d 446 (1989). However, my review of the documents submitted by defendant indicates that there were no charges pending against Deanna at the time of either defendant's June 1994 trial, which ended in a mistrial, or defendant's November 1994 trial, which resulted in defendant's convictions. Contrary to the majority's statement, a warrant for Deanna's arrest was not authorized until December, 16, 1994, and a complaint was not sworn out until December 22, 1994. Moreover, the Department of Social Services was both the investigating agency and the complaining witness, as well as the arresting agency, in Deanna's case. Defendant has cited no authority concerning the effect of a pending investigation. Accordingly, I find no abuse of discretion in the trial court's denial of defendant's motion for a new trial on this ground. *Torres, supra.*

IV

I conclude that defendant was not denied a fair and impartial trial by any remarks made by the prosecutor. *People v Bass (On Rehearing)*, 223 Mich App 241; 565 NW2d 897 (1997).

V

I concur in the majority's holding that the trial court's decision to admit the rebuttal testimony of Deanna's stepmother did not constitute an abuse of discretion.

VI

Assuming without deciding that Deanna's and Scott's hearsay testimony concerning Raymond Turner's statements was not properly admitted under MRE 804(b)(3) (statement against interest), I would nevertheless hold that this testimony was properly admitted under MRE 803(3) (then existing mental, emotional, or physical condition).

VII

I concur in the holdings in part VII of the majority opinion.

VIII

Because I would affirm defendant's convictions, I decline to address the prosecutor's argument that a count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), should be added upon retrial. I likewise decline to address the prosecutor's challenges to the scoring of the sentencing guidelines. *People v Mitchell*, 454 Mich 145, 172-178; 560 NW2d 600 (1997).

In summary, defendant received a fair trial in this case. I would affirm his convictions and sentence.