# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTONIO DONTEZ WEBSTER,

Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 333636
Wayne Circuit Court
LC No. 16-000806-01-FC

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of assault with intent to do great bodily harm less than murder, MCL 750.84; two counts of felonious assault, MCL 750.82; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, second offense (felony-firearm 2d), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 8 to 20 years for each conviction of assault with intent to do great bodily harm, two to eight years for each felonious assault conviction, and 4 to 10 years for the felon-in-possession conviction, to be served consecutively to a five-year term of imprisonment for the felony-firearm 2d conviction. We affirm.

## I. BASIC FACTS

Defendant's convictions arose from the April 21, 2015, shooting assaults of Brian Fitzhugh and Jamal Roquemore. Evidence at trial indicated that defendant's girlfriend, Dionne Williams-Mitchell, was also involved in a relationship with Roquemore. Neither man knew about Dionne's relationship with the other. Dionne and her sister, Marcelnia Mitchell, arranged to go out with Roquemore and his friend, Fitzhugh, for Roquemore's birthday. Dionne, along with Marcelnia, picked the men up and drove to an abandoned house, allegedly to buy marijuana. Defendant, Dahviell Richardson, and Keith Williams were at the house. Defendant was upset that Dionne was with another man. Defendant and Richardson had firearms and shot Roquemore and Fitzhugh. Two weapons were recovered from defendant and Dionne's home, and defendant's DNA was found on one of the firearms. The other firearm, an assault rifle, was determined to have fired cartridge casings left at the scene.

-1-

## II.  ADMISSION OF EVIDENCE

Defendant argues that the trial court erred in admitting six recorded telephone calls into evidence.  We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).  "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo."  *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003).

Evidence must be relevant to be admissible at trial.  MRE 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  "Evidence that a defendant made efforts to influence an adverse witness is relevant if it shows consciousness of guilt."  *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010).  "[E]vidence that a defendant has attempted to suppress testimony or induce perjury is admissible" as evidence of guilt because it indicates that the defendant is aware that his defense is weak if not unfounded.  *People v Hooper*, 50 Mich App 186, 199; 212 NW2d 786 (1973).  All of the calls were introduced for this purpose.

The calls fall into two groups, those in which defendant was a participant and those in which he was not.  Defendant participated in two calls placed on May 6 and May 20, 2015.  In the May 6 call, defendant agreed that his brother should contact someone on his behalf and convince that person to change her statement to one indicating that defendant had not been involved in the incident.  Defendant's own words, offered in evidence against him, are not hearsay, MRE 801(d)(2)(A), and they were relevant to show his consciousness of guilt.  Therefore, the trial court did not abuse its discretion in admitting the May 6 call.

The same cannot be said of the May 20 call.  In that call, defendant claimed that someone had lied in court.  He apparently wanted that person's testimony disseminated to the public.  While defendant's own words are not hearsay, MRE 801(d)(2)(A), and thus are not inadmissible under MRE 802, they must still be relevant to a fact in issue to be admissible.  MRE 402.  Although they were offered to demonstrate defendant's consciousness of guilt, nothing defendant said in the May 20 call can reasonably be construed as indicating a consciousness of guilt.  Defendant did not try to have someone threaten the alleged liar or prevent the alleged liar from testifying or induce the alleged liar to change his or her prior testimony.  The call is not entirely intelligible but the prosecutor argues that, in it, defendant wanted someone to send his regards to Richardson.  However, that defendant maintained affection for his codefendant would indicate friendship, but would not be evidence of consciousness of guilt.  We conclude that the trial court abused its discretion in admitting the May 20 call.

Of the remaining four calls, three were between Dionne and Dale Morgan and one was between Dionne and Donovan Spidell.  Morgan and Spidell were both jail inmates and Dionne did not know either of them.  In two of the calls, made on May 3 and May 24, Dionne was asked to "become scarce" and to "get out of town."  Those requests constituted attempts to suppress her testimony and thus would be admissible had they been made by defendant.  *Hooper*, 50 Mich App at 199.  Evidence that another person attempted to suppress a witness's testimony is admissible if it is shown that he or she acted "at the instigation of the defendant, or with his

consent or approval, or at least knowledge or expectation that [the action] had been or would be" done. *People v Salsbury*, 134 Mich 537, 569-570; 96 NW 936 (1903); see also *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982) (evidence that people had threatened a prosecution witness was admissible where a connection between defendant and the threats was shown). However, the callers' statements were hearsay because they were not made by the declarants while testifying and were offered to prove the truth of the matter asserted. MRE 801(c).

The trial court ruled that the calls were not hearsay under MRE 801(d)(2), but did not identify which subsection(s) of that rule applied. MRE 801(d)(2) applies to "[a]dmission[s] by a [p]arty-[o]pponent." Such admissions include a "party's own statement." MRE 801(d)(2)(A). Because the statements at issue were made by Morgan and Spidell, MRE 801(d)(2)(A) does not apply. Admissions by a party-opponent include "a statement by a person authorized by the party to make a statement concerning the subject[.]" MRE 801(d)(2)(C). This rule "requires that the party authorize the person to make a statement concerning the subject," but the person need not be an "agent" of the party. *Barnett v Hidalgo*, 478 Mich 151, 162-163 n 6; 732 NW2d 472 (2007). One court has held that the fact that the defendant confessed to a murder to his estranged wife and told her to contact others was sufficient to show that the defendant had authorized his estranged wife to make a statement concerning the subject. *State v McLemore*, 343 NC 240, 247-248; 470 SE2d 2 (1996).

In the May 3 call, Morgan indicated that he was calling on behalf of a mutual friend. The content of the conversation supports an inference that the mutual friend is defendant: it is someone to whom Dionne wrote letters and to whom she recently sent money, and the parties stipulated that money was deposited in defendant's account on April 29 and May 1, 2015.[1] Unlike the *McLemore* case, there is no direct evidence that defendant asked Morgan to call Dionne and tell her to disappear. However, that was established by the circumstances surrounding the call and the content of the call: Morgan and Dionne were strangers, so Morgan must have gotten her number from someone who was acquainted with her, and Morgan stated that he was calling Dionne because her friend could not talk on the telephone himself. Therefore, the trial court did not abuse its discretion to the extent it admitted the May 3 call under MRE 801(d)(2)(C).[2]

---

[1] Dionne testified at trial that she sent defendant money.

[2] Defendant alternatively argues that Morgan's May 3 call was inadmissible because it violated his right of confrontation. In all criminal trials, the defendant has a right to be confronted by witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. In general, the Confrontation Clause bars the introduction of out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Bullcoming v New Mexico*, 564 US 647, 652; 131 S Ct 2705; 180 L Ed 2d 610 (2011); *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A statement is testimonial if its primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224

The same cannot be said for the May 24 call. Spidell indicated that he was calling to tell Dionne that "Dog" said that she and another person should leave town. Dionne testified at trial that she knew "Dog" to be a reference to defendant. Unlike the *McLemore* case, there is no direct evidence that defendant asked Spidell to call Dionne and tell her to leave town and, unlike Morgan's May 3 call, Spidell did not say anything to indicate that defendant had asked him to call. Therefore, the trial court abused its discretion to the extent it admitted the May 24 call under MRE 801(d)(2)(C).

We also conclude that the trial court abused its discretion to the extent it admitted the May 24 call under MRE 801(d)(2)(D) because there is no evidence that defendant and Spidell had an employment relationship and no evidence attributable to defendant indicating the existence of an agency relationship. See *Shinabarger v Phillips*, 370 Mich 135, 140; 121 NW2d 693 (1963), and *Fisk v Liverpool & London & Globe Ins Co*, 198 Mich 270, 275; 164 NW 522 (1917). Finally, we conclude that the trial court abused its discretion to the extent it admitted the May 24 call under MRE 801(d)(2)(E) because there is no evidence apart from the call itself to show that defendant and Spidell conspired to obstruct justice. See *People v Brownridge*, 225 Mich App 291, 305; 570 NW2d 672 (1997), rev'd in part on other grounds 459 Mich 456 (1999), amended 459 Mich 1276 (1999).

With regard to the remaining two calls, we agree that they were not relevant. In the May 7 call, Morgan indicated that he was calling on behalf of a mutual friend who was trying to arrange housing for Dionne so she would "be a little stable." That defendant wanted Dionne to have stable housing does not show a consciousness of guilt regarding the crime charged. In the May 21 call, Dionne assured Morgan that she and someone else were "ghost," meaning that they had disappeared. Apparently this call was offered to show that Dionne had agreed to make herself "scarce" as previously requested. However, it is the request that the witness not cooperate with authorities that demonstrates consciousness of guilt. Whether the witness acted on the request is not relevant when, as here, it was not offered to show why the witness was uncooperative, *People v Kelly*, 231 Mich App 627, 640; 588 NW2d 480 (1998), or to explain the witness's prior inconsistent statement, *People v Clark*, 124 Mich App 410, 412; 335 NW2d 53 (1983). Therefore, the trial court abused its discretion in admitting the May 7 and 21 calls.

Although we have concluded that the trial court erred in admitting the May 7, 20, 21, and 24 telephone calls, we hold that reversal is not required because the error was harmless. A preserved nonconstitutional error regarding the admission of evidence is presumed to be harmless; the error warrants reversal if it is more probable than not that it determined the outcome of the case. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). An error is not outcome-determinative unless it undermined the reliability of the verdict in light of the untainted evidence. *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001).

---

(2006). Defendant does not address the issue whether Morgan's statement to Dionne was testimonial in nature. However, voluntary statements "made informally to an acquaintance" are generally not testimonial in nature. *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008). Therefore, we reject defendant's Confrontation Clause argument.

The evidence showed that Dionne drove to a house where defendant was located. Defendant was Dionne's boyfriend and became upset that Dionne was in the company of another man, and they had a discussion about it. There was evidence that defendant was in possession of a shotgun, which fired plastic cartridges of some kind. Roquemore testified that he was shot with a shotgun. He said that one of the two men who attacked him was the man Dionne had been talking to and that one of the men wanted to know why Roquemore was with his girl. A shotgun containing a spent plastic cartridge was found in defendant's house and defendant's DNA was found on the shotgun forearm. In addition, Fitzhugh testified that shots were coming from two guns during the incident[3] and that he was shot in the leg. It was determined from ballistics that the assault rifle found in defendant and Dionne's home had been used during the incident. Dionne identified defendant and Richardson as the shooters and testified that, after the shooting, defendant and Richardson gave each other "high fives," and defendant said "[t]hat he left him slumped" and "did [him] dirty." Dionne testified that these phrases referred to "kill[ing]" Roquemore. Given such evidence, and the fact that none of the May 7, 20, and 21 calls referenced defendant's participation in the crime or otherwise suggested his guilt, it is not more probable than not that the May 7, 20, and 21 phone calls affected the outcome of the case. Although the May 24 call was prejudicial because it suggested defendant's consciousness of guilt, it did so to the same extent as the May 3 call, which was properly admitted. Therefore, considering the cumulative nature of the May 24 call in light of the entire record, *People v Smith*, 456 Mich 543, 554-555; 581 NW2d 654 (1998), we conclude that the error was likewise harmless.

## III. JURY INSTRUCTIONS

The trial court gave a special, nonstandard jury instruction regarding the permissible use of the telephone calls. On appeal, defendant argues that the instruction improperly advised the jury that if it concluded that the calls were made by defendant or on his behalf, it could use the calls "to determine the guilt or innocence of the defendant of the charged crimes." Defendant contends that this was error because a jury determines whether a defendant's guilt has been proved beyond a reasonable doubt, not whether the defendant is innocent. However, the record does not support defendant's claim of error. Although the prosecutor's proposed instruction contained the allegedly improper language, the trial court changed the wording of the proposed instruction and defendant approved the wording of the instruction as amended. The instruction as given did not include the allegedly improper language and the record thus does not support the claim of error.[4]

---

[3] The jury was given an instruction on aiding and abetting.

[4] It is not entirely clear whether defendant is also attempting to argue that no instruction at all should have been given regarding the telephone calls, but, at any rate, we reject this possible argument. The trial court accurately informed the jury about the law.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro