# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN JAMEL MAY,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No. 320635
Wayne Circuit Court
LC No. 12-009379-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN DEWON WHITE,

        Defendant-Appellant.

No. 320696
Wayne Circuit Court
LC No. 13-001596-FC

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendants, Jonathan May and Brian White, were convicted of two counts of first-degree premeditated murder, MCL 750.316(1)(a), three counts of assault with intent to commit murder, MCL 750.83, and one count of possession of a firearm during the commission of a felony, MCL 750.227b. Defendant White was also convicted of felon in possession of a firearm, MCL 750.224f. In September 2013, their first trial before a single jury ended in a mistrial. In January 2014, they were retried before separate juries and convicted as charged. Both defendants appeal as of right. We affirm in each appeal.

Defendants' convictions arise from the February 2012 shooting deaths of Ernest Bryant and Brinda Long, and the nonfatal shooting assaults of Eric Bowler, Quintus Parham, and Donte Laird. All five victims had been riding around in a van and had stopped at Parham's house. Just after Parham got out of the van, three men approached the vehicle and began firing shots. The prosecution relied principally on the identification testimony of Eric Bowler to link defendants to the crime. Bowler, who knew both defendants from the neighborhood, gave a statement to the

-1-

police identifying defendants as the shooters shortly after the shooting. In March 2013, however, Bowler gave a statement to a defense investigator in which he denied knowing the shooters. Shortly after giving that statement, Bowler notified the police, and later similarly testified at trial, that he was forced at gunpoint to go to defendant May's attorney's office and was coerced into giving a false statement denying that he knew the shooters. Bowler reaffirmed to the police, and at trial, that defendants May and White were the shooters. The defense theory at trial was that the identification testimony was not credible.

## I. DOUBLE JEOPARDY

Both defendants argue that the constitutional protection against double jeopardy barred their retrial after their first trial ended in a mistrial. Neither defendant preserved this double jeopardy issue by raising it either at the time the mistrial was granted or at the second trial. See *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). A double jeopardy challenge presents a question of constitutional law that is generally reviewed de novo. *People v Nutt*, 469 Mich 565, 575; 677 NW2d 1 (2004). However, we review an unpreserved double jeopardy claim for plain error affecting substantial rights. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

In September 2013, a joint trial before a single jury began. At that time, defendant May was represented by attorney David Cripps. During opening statement, the prosecutor recounted how Bowler implicated both defendants in the shooting when he spoke to the police two days after the crime and when he testified at the preliminary examinations. The prosecutor then added:

> After he testifies at the preliminary exams, Eric Bowler is abducted, taken off the streets, whatever, at gunpoint by two men he does not know. Taken down to the Defendant's, Jonathan May's attorney's office, Mr. Cripps, where he's forced to give a statement saying nothing happened basically or changing his statement.

> After he does that, he contacts Sergeant Ford, lets Sergeant Ford know what's going on, and that he had been taken off the streets and forced to make a different statement.

After all parties gave their opening statements, defendant White moved for a mistrial on the ground that the prosecutor's comments about Bowler being kidnapped and taken to attorney Cripps's office placed Cripps in a position of having to respond to those claims, but he could not appear as a witness at defendant May's trial. Defendant May joined in the mistrial motion. The trial court ruled that defendant May's ability to receive a fair trial was jeopardized by the prosecutor's opening statement, which established a likelihood that it would be necessary to call Cripps, his attorney, as a witness. Accordingly, with the concurrence of both defendants, the court granted the motion for a mistrial. Now, for the first time on appeal, both defendants argue that their retrial was barred by double jeopardy. We disagree.

Under both the federal and Michigan constitutions, a defendant is prohibited from twice being placed in jeopardy for the same offense. US Const, Ams V, XIV; Const 1963, art 1, § 15;

*People v Echavarria*, 233 Mich App 356, 362; 592 NW2d 737 (1999). It is well established that a retrial is not barred on double-jeopardy grounds where the defendant requests or consents to a mistrial unless the prosecutor engaged in conduct that was intended to provoke or goad the defendant into requesting a mistrial. *People v Lett*, 466 Mich 206, 215; 644 NW2d 743 (2002); *People v Dawson*, 431 Mich 234, 253; 427 NW2d 886 (1988). A retrial is always permitted when the mistrial is caused by manifest necessity. *Lett*, 466 Mich at 215. It is only where the prosecutor has engaged in intentional conduct that a defendant does not waive double-jeopardy protections by moving for a mistrial. *Dawson*, 431 Mich at 253. As explained in *People v Tracey*, 221 Mich App 321, 326; 561 NW2d 133 (1997):

> Retrials are an exception to the general double jeopardy bar. Where a mistrial results from apparently innocent or even negligent prosecutorial error, or from factors beyond his control, the public interest in allowing a retrial outweighs the double jeopardy bar. The balance tilts, however, where the judge finds, on the basis of the "objective facts and circumstances of the particular case," that the prosecutor intended to goad the defendant into moving for a mistrial. [Quoting *Dawson*, 431 Mich at 257.]

Both defendants expressly stated on the record that they concurred in the request for a mistrial based on manifest necessity. The record does not support their contention that the prosecutor engaged in intentional conduct designed to goad them into moving for a mistrial. The prosecutor opposed the motion for a mistrial. Neither defendant challenged the prosecutor's entitlement to introduce evidence surrounding the circumstances of Bowler's statement to the defense investigator. Indeed, that evidence was admitted at defendants' second trial and neither defendant challenged its admissibility. At most, it appears that the prosecutor was negligent for failing to raise the issue before trial in order to resolve whether attorney Cripps would need to be called as a witness to refute the prosecution's evidence, and whether that situation would require that he be removed as defendant May's counsel. The fact that the prosecutor was not intending to goad defendants into moving for a mistrial is supported not only by the prosecutor's opposition to the motion, but also by the fact that it was the trial court, not the defense attorneys, who apparently first indicated that there might be a problem with the proposed testimony from Bowler if attorney Cripps continued to represent defendant May. On this record, there is no basis for concluding that defendants' retrial was barred by double jeopardy.

We also reject defendant White's additional argument that a mistrial was not manifestly necessary with respect to him because he was represented by different counsel and, thus, his continued representation would not have been compromised by any need to call attorney Cripps as a witness. It was defendant White who first moved for a mistrial. Further, defendants were being tried jointly, before a single jury, and the midtrial severance of May's case risked prejudicing White by either causing the jury to speculate on the reasons for the severance, or by affecting how the jury would view Cripps's credibility if called to testify at trial after he originally appeared as counsel for codefendant May. Under the circumstances, and because defendant White requested and agreed to a mistrial, double jeopardy did not bar his retrial.

## II. DEFENDANT MAY'S REMAINING ISSUES IN DOCKET NO. 320635

### A. EVIDENCE OF THREATS

Defendant May next argues that a new trial is required because of the admission of two recorded jailhouse telephone conversations where the recipient of his calls mentioned taking some unspecified action against Bowler as a "last resort." Defendant May argues that this evidence was not admissible because he did not adopt the recipient's statement as his own, and evidence of third-party threats is not admissible against a defendant unless the threats can be linked to the defendant.

Initially we note that, following discussions regarding this evidence, defendant May's counsel expressly withdrew his objection to the admissibility of the telephone recordings. Thus, this issue may be considered waived. See *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving no error to review. *Id.* Even if the issue had not been waived, however, defendant May would not be entitled to appellate relief.

Evidence of threats can be admissible for two general purposes. First, threats made against a witness may be relevant and admissible to demonstrate a defendant's consciousness of guilt. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). However, such evidence is admissible only if there is evidence connecting the threats to the defendant. *People v Walker*, 150 Mich App 597, 603; 389 NW2d 704 (1985); *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982). Second, threats against a witness may also be relevant to show the witness's bias or reluctance to testify. *People v Norrell Johnson*, 174 Mich App 108, 112; 435 NW2d 465 (1989). In that situation, the evidence is admissible because it is probative of the witness's credibility and there is no requirement that the threats be directly linked to the defendant. *Id.* Threats from third parties can be relevant to the witness's credibility by explaining a witness's reluctance to testify or explaining a witness's prior inconsistent statements. See *People v Gary Clark*, 124 Mich App 410, 412; 335 NW2d 53 (1983).

In this case, evidence was presented that Bowler gave a recorded statement that was inconsistent with both his prior police statement and preliminary examination testimony. The circumstances surrounding the later-recorded statement were disputed at trial. Bowler claimed that he was abducted from the street, taken to an office, and coerced into giving the inconsistent statement. The prosecution used the two recorded jailhouse telephone calls, which contained references to "last resort" in relation to Bowler, to argue that the calls supported Bowler's explanation of the circumstances surrounding the later-recorded statement and, thus, to show that his original statement and testimony, and not his recorded statement, were credible. The trial court instructed the jury that it could consider evidence of threats when evaluating a witness's credibility, but did not instruct the jury on evidence of consciousness of guilt in relation to the telephone calls. Because the record discloses that the challenged telephone calls were not offered or used to prove defendant May's consciousness of guilt, it was not necessary for the prosecutor to prove that May personally adopted or endorsed any threatened conduct against Bowler in those calls. Accordingly, we reject this claim of error.

## B. FLIGHT INSTRUCTION

Defendant May next argues that the trial court erred in instructing the jury on flight. The trial court found that the instruction was supported by evidence that, after having been accused of this crime, defendant May left this state and went to Arkansas, where he was eventually located and arrested. Although defendant May maintains that he did not know he was wanted by the police when he left the state, and that he left for innocent reasons to visit family, the prosecution presented a recorded telephone call in which he discussed his time in Arkansas. Defendant May's statements during the call supported an inference that he was aware he was wanted by the police and went to Arkansas to hide. Moreover, the trial court instructed the jury that the evidence did not prove defendant May's guilt, and the court appropriately left it to the jury to determine his true motivations for leaving the state, including whether he did so for innocent reasons, such as to visit relatives. Accordingly, the trial court did not abuse its discretion in giving the flight instruction. See *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citation omitted).

## III. DEFENDANT WHITE'S REMAINING ISSUES IN DOCKET NO. 320696

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant White argues, through both appointed appellate counsel and in a supplemental pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that he was denied the effective assistance of counsel at trial. Because defendant White did not raise any of these ineffective assistance of counsel issues in the trial court, and this Court denied his pro se motion to remand with respect to this issue, our review is limited to errors apparent on the record. See *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel, a defendant must show that defense counsel's performance fell below an objective standard of reasonableness, and that counsel's representation so prejudiced the defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). The defendant must overcome the strong presumption that defense counsel provided adequate representation. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012); *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

### 1. APPELLATE COUNSEL'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Defendant White argues that defense counsel was ineffective for not introducing the audio recording of Bowler's statement to the defense investigator to impeach Bowler. But counsel's decisions regarding what evidence to introduce and how to cross-examine a witness are matters of trial strategy. *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014). Although counsel did not introduce the audio recording of Bowler's statement, he did use a transcript of Bowler's statement to impeach his prior statements implicating defendant White in the commission of this crime. In addition, defendants presented the testimony of attorney Cripps, who denied seeing anything unusual about Bowler, or seeing any indication of duress.

Defense counsel's methodology achieved the intended purpose of informing the jury of the substance of Bowler's statement to the defense investigator, without the risk of having the jury determine from hearing the actual audio recording that Bowler's statement sounded contrived, insincere, or coerced. The testimony of attorney Cripps also allowed the jury to find that Bowler was not coerced into giving that statement. Defendant White has not overcome the presumption of sound strategy, and this Court will not substitute its judgment regarding matters of trial strategy. See *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Accordingly, this claim fails.

## 2. DEFENDANT'S PRO SE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The prosecution's theory at trial was that there was a history of problems between defendant White and victim Parham, including a prior incident in August 2011 when Parham shot up a van occupied by White's then girlfriend, Pamela Cooper. Less than a week before the instant offenses were committed, Parham pleaded no contest to assault charges in Cooper's case pursuant to a plea agreement that included a sentence of 3 to 10 years. Defendant White now argues that defense counsel was ineffective for not cross-examining Cooper to establish that she had not told White about the plea and sentence agreement in Parham's assault case, thereby refuting the prosecution's theory regarding White's motive for shooting Parham and the others with him. There is no merit to this issue.

As indicated previously, counsel's decisions whether and how to cross-examine Cooper were matters of trial strategy, which this Court will ordinarily not second guess. See *Gaines*, 306 Mich App at 310; *McFadden*, 159 Mich App at 800. Defendant White's argument is based on the erroneous premise that his knowledge about the sentence that Parham received in Cooper's assault case was the sole motivation for the shooting. But the prosecution's cross-examination of Cooper established that there were problems between defendant White and victim Parham that preceded Cooper's assault. Furthermore, Cooper had already testified on direct examination that she did not speak with defendant White in 2012, had never told him about the proceedings involving Parham, and had not talked to him about that case. That testimony, if believed, would have allowed the jury to find that defendant White had not been informed about Parham's plea and sentence in the assault case. Therefore, defense counsel's failure to further pursue that subject matter on cross-examination was neither objectively unreasonable nor prejudicial.

Defendant White also argues that counsel was ineffective for failing to conduct a reasonable investigation to discover potential witnesses who could have exonerated him. The existing record does not support this argument. Although defendant White requested that this Court remand the case for an evidentiary hearing, he has not submitted any affidavits or made any other offer of proof identifying any witnesses or the substance of their testimony. He also has not provided any affidavit or other offer of proof related to his attorney's trial preparations. The burden is on the defendant to establish factual support for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant White has not made a minimal showing of facts to be established on remand, he is not entitled to an evidentiary hearing.

Defendant White also argues that defense counsel was ineffective for not investigating or calling an expert witness to testify regarding problems with the reliability of eyewitness

testimony. Again, defendant White has not submitted an affidavit or other offer of proof from a proposed expert witness to demonstrate how such testimony could have been helpful or made a difference in the case. Moreover, the witnesses in this case were already familiar with defendant White. Significantly, Bowler testified that he knew both defendants because they grew up in the same neighborhood; thus, there is no reasonable probability that the testimony of an expert could have affected the outcome.

Defendant White also asserts that trial counsel (1) failed to consult with him about an alibi defense, (2) failed to provide him with discovery, (3) failed to meet with him after the first trial ended in a mistrial in time to prepare for the second trial, and (4) failed to return numerous telephone calls from him and his family members to discuss trial strategy. Again, the extent of counsel's pretrial preparations and contacts are not a matter of record, defendant White has not supported his claims with any affidavits or other offers of proof, and he does not explain how these alleged deficiencies affected the outcome of trial. Accordingly, these claims fail.

## B. PROSECUTORIAL MISCONDUCT

In his Standard 4 brief, defendant White also argues that the prosecutor improperly advanced arguments without evidentiary support and, thus, denied him a fair trial. Because there was no objection to the prosecutor's conduct at trial, this issue is unpreserved. An unpreserved claim of prosecutorial misconduct is reviewed for plain error affecting substantial right. *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003).

Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). A prosecutor is afforded great latitude during closing argument. *Id*. at 282. A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but he is free to argue the evidence and any reasonable inferences arising from the evidence in support of his theory of the case. *Id.*; *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003).

Defendant White first argues that the prosecutor improperly argued facts not in evidence in the following portion of his closing argument:

> Third, that this intent to kill was premeditated, that is thought out beforehand. Now they came to that location, they came to the location with guns, they came to the location with guns that were loaded. They surrounded the vehicle. And without much discussion, they shot into the van. So they had to have planned this before they got there. This was not something that was done on the spur of the moment. They were lying in wait. They pulled up as soon as Ernest's van pulled up. They were waiting for them. And when they saw them pull up and park, they came up, they parked, and they committed this crime.

Defendant White claims that there was no evidence to support the prosecutor's argument that the defendants planned the shooting because no witnesses testified to that fact. We disagree.

The circumstances of the shooting supported the prosecutor's theory that Parham was the intended victim; defendants had planned the offense; and defendants were waiting for Parham to return. When Parham arrived at his home, and just as he was getting out of the vehicle, defendants appeared, emerged from a van, and almost immediately began shooting. It was reasonable to infer from defendants' immediate presence when Parham arrived that defendants had been following or waiting for Parham to return. It was also reasonable to infer from the manner in which the two defendants and a third man, all of whom were armed, approached the vehicle and began shooting that the shooters had premeditated and planned the shooting of Parham, which also led to the shooting deaths of Bryant and Long. Although no witness specifically testified that the shooting was premeditated, the circumstantial evidence and reasonable inferences arising from that evidence supported the prosecutor's argument. Accordingly, the prosecutor's remarks were not improper.

Defendant White next argues that the following comments by the prosecutor during rebuttal argument were not supported by Cooper's testimony:

Now Pamela Cooper did testify, and she said -- she tried to tell you that, you know, this is my boyfriend, but -- and they were having problems and I hadn't spoken to him, and then I pulled out some jail tapes, and she had to admit, yeah, I'm still associating with them. She was the girlfriend. She was at the time, and the reason why she didn't want to be involved in the case as far as the prosecution of Quintus is because they wanted to handle it on the streets. But the law didn't allow it to happen. They made her come to court, they made her come and testify, and then when Quintus finally pled out on the case, they didn't like the sentence, and two days later this happens.

MR. SLAMEKA [White's attorney]: Wait, wait, wait, Ms. Cooper didn't say anything about the sentence. She just walked away from the case. That's an unfair comment to make.

THE COURT: The objection is overruled.

MR. HAYWOOD [the prosecutor]: The sentence was a judicial notice.

THE COURT: The objection is overruled. Please continue.

MR. HAYWOOD: Thank you, Your Honor. So she testifies that she didn't want anything to do with the case because they wanted to take care of it on the streets. But they only had a little bit of time to take care of it because Quintus was going to be sentenced, and they couldn't wait. Two days later this event occurs, it occurs. The people who were shooting, the three -- the two we have in court plus the defendant, Rakesk White, who is not here.

Cooper never admitted that defendants shot Parham and the others to take care of the situation "on the streets" instead of in the courts. Nevertheless, it was not unreasonable for the prosecutor to make that argument considering (1) Cooper's admitted reluctance to cooperate in both this case and her assault case, and (2) the fact that this shooting occurred just a few days

after Parham's plea, during the limited period of time before he would begin serving his sentence. Accordingly, the prosecutor's argument did not amount to plain error.

Because the prosecutor's conduct was not improper, defendant White's alternative claim that counsel was ineffective for failing to object to the remarks is also without merit. Counsel is not required to make futile objections. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly