# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

TROY DESEAN JOHNSON,

          Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 337999
Jackson Circuit Court
LC No. 15-000816-FC

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

A jury convicted defendant, Troy Desean Johnson, of voluntary manslaughter, MCL 750.321, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Johnson to 10 to 15 years' imprisonment for the manslaughter conviction and two years' imprisonment for the felony-firearm conviction, to run consecutively. Johnson appeals as of right. We affirm Johnson's convictions, but vacate the sentence imposed for his manslaughter conviction and remand for resentencing consistent with this opinion.

## I. FACTUAL BACKGROUND

On the evening of February 17, 2015, Officer Nathan Belen was dispatched to the intersection of First Street and Randolph Street in Jackson City, Michigan, in response to a report of shots fired. Officer Belen spotted an SUV stopped on a snowbank on the south side of Randolph Street, approximately two houses west of the intersection. When he approached the SUV, he saw that someone was in the driver's seat with his head tilted down and that the engine was still revving, as if the driver was stepping on the accelerator. Officer Belen also noticed that the backseat window on the driver's side of the SUV, which had dark tinted glass, had been shattered. After another officer broke the front driver's side window with his flashlight in order to render aid, the officers saw that the driver had a gunshot wound to his forehead. According to Detective Holly Rose, it appeared that the bullet entered the vehicle through the rear window on the driver's side and that the victim's head was likely turned to look over his left shoulder at the time he was shot. Dark tinted glass, consistent with the shattered glass from the SUV's rear window, was discovered in the street in front of a home located approximately two houses east of the intersection.

-1-

The prosecution's case relied heavily on the testimony of Amber Rumsey, who was Johnson's girlfriend at the time of the shooting. Rumsey had previously testified against Johnson[1] and, at the time of the current trial, was charged with perjury and being an accessory after the fact. Rumsey recalled that on the evening of February 17, 2015, she, defendant, and her minor son, TR, were eating dinner in her home on First Street, approximately two houses south of Randolph Street. During their meal, TR's father began "harassing" them, repeatedly calling Rumsey, banging on the apartment door, and honking his car horn from outside. Johnson became agitated and paced the room. When the banging and honking ceased, Rumsey went to her bedroom window to check if TR's father had left. Johnson was gone when she reentered the living room. Moments later, Rumsey heard four or five gunshots. According to Rumsey, she then ran out her front door and saw Johnson at the corner of First Street and Randolph Street, shooting toward an SUV driving through the intersection.[2] Rumsey testified that Johnson then turned around and walked away. Rumsey picked Johnson up in her car and drove him and TR to an apartment of Johnson's friend.

Rumsey explained that she did not call the police to report the crime because she was afraid of going to jail. Rumsey also indicated that she was frightened of Johnson because, a few days after the shooting, Johnson told her that "his blood brothers in Detroit knew [she] was the only person that knew."

The following weekend, Rumsey disclosed the events surrounding the shooting to her friend, who then reported the crime to the police. When Rumsey first talked to Detective Rose, she denied seeing Johnson shoot the gun. A few days later, Rumsey and TR were called to the police station again. Rumsey directed TR not to tell the police that she drove Johnson after the shooting, and Rumsey again denied that she witnessed Johnson shoot the gun. Moreover, on at least three occasions, Rumsey testified under oath that she did not see Johnson shoot a gun. In fact, Rumsey did not disclose the truth until a week before the start of Johnson's third trial, after she had been charged with perjury in connection with her previous testimony.

Rumsey testified that she lied and told TR to lie to protect them, explaining that she had been scared of Johnson since the day of the shooting. Rumsey admitted that she continued a relationship with Johnson for two to three weeks after the incident, but explained that she had no choice because Johnson "basically threatened [her] when he said his blood brothers know [she was] the only person that knows." However, she admitted that she spoke with Johnson over the

---

[1] Johnson was tried before a jury three times on the same charges. The first jury trial resulted in a mistrial after the prosecution introduced evidence of Johnson's prior incarceration. The second jury trial resulted in a mistrial because of a deadlocked jury. The third jury trial resulted in Johnson's acquittal of first-degree murder and second-degree murder, and his conviction of voluntary manslaughter and felony-firearm.

[2] Rumsey testified that, although she did not see a gun, she saw Johnson's arm raised in the air and the shot. TR remained in the apartment at the time of the shooting and did not see the shooter.

phone while Johnson was in jail and bought him phone cards so that he was able to call her. Rumsey also testified that she received threatening phone calls orchestrated by Johnson.

TR testified pursuant to a grant of immunity. Like Rumsey, TR recalled that his father drove to Rumsey's home on the night in question and began honking the horn of his vehicle, which caused Johnson to pace around the living room in apparent agitation. When TR entered the kitchen, he saw Johnson pulling a black ski mask over his head. According to TR, Johnson instructed him to return to the living room before Johnson left through the back door. TR further testified that Rumsey went onto the front porch after they heard several loud popping sounds, but he remained inside. TR recalled going to an apartment with Rumsey and Johnson after the shooting for approximately two hours before returning home. TR testified that he had never disclosed that Rumsey had driven Johnson away after the incident because he feared that his mother would go to jail and that Johnson's friends would harm them. TR explained, over defense counsel's objection, that his fear of Johnson's friends derived from Johnson's gang involvement.

In closing arguments, the prosecution presented a transferred intent theory, suggesting that Johnson left Rumsey's home to confront TR's father, but mistakenly shot the victim, with whom Johnson had no apparent connection. In response, defense counsel emphasized that Rumsey, who was the only person to identify Johnson as the shooter, admitted that she repeatedly lied to the police and in court and, therefore, lacked credibility. Moreover, her testimony conflicted with the physical evidence. Defense counsel also noted that the victim had six small bags of marijuana in his possession when he was shot and was under investigation by the Jackson Narcotics Enforcement Team, which suggested that the shooting may have been drug related. And defense counsel argued that the police did not adequately investigate an alternative suspect. After deliberating for two days, the jury found Johnson not guilty of first-degree premeditated murder and second-degree murder, but guilty of voluntary manslaughter and felony-firearm. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Johnson first argues that there was insufficient evidence to establish that he was guilty of a homicide. We disagree.

On appeal, a claim of insufficient evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court reviews "the evidence in the light most favorable to the prosecution" and determines "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. at 428. "This Court will not interfere with the jury's role of determining the weight of the evidence or deciding the credibility of the witnesses." *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004).

In order to prove voluntary manslaughter, the prosecution must establish that "the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions."

*People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003). In addition, "[i]dentity is an element of every offense." *People v Bass*, 317 Mich App 241, 263; 893 NW2d 140 (2016) (quotation marks and citation omitted). On appeal, Johnson contends that there was insufficient evidence that he was the person who killed the victim.

Johnson's argument is largely based on his contention that Rumsey was an unreliable witness and that her testimony was incredible. However, "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Furthermore, this Court has found that a positive identification of the defendant is generally sufficient evidence to support a conviction, *id.*, and, in this case, Johnson's conviction likely turned on Rumsey's testimony identifying Johnson as the shooter.

Johnson also argues that the physical evidence from the scene made Rumsey's testimony implausible. According to Rumsey, Johnson shot at the victim from the corner of Randolph Street and First Street, while the SUV was traveling westbound through the intersection. But glass shards that matched the tint from the backseat driver's side window where the bullet entered the SUV were found in the street, several houses east of the intersection. Thus, according to Johnson, if he had been at the corner shooting at the vehicle as it passed traveling westbound, there would have been no possibility that the glass from the shattered window could have been found in the street east of the intersection. However, the jury—presented with the same evidence and argument—concluded otherwise, and it is up to the jury to determine what weight to give the evidence. *Hardiman*, 466 Mich at 428.

"Moreover, the prosecution need not disprove all theories consistent with defendant's innocence; it need only introduce sufficient evidence to convince a reasonable jury of its theory of guilt despite the contradictory theory or evidence a defendant may offer." *People v Solmonson*, 261 Mich App 657, 662-663; 683 NW2d 761 (2004). Here, the jury may have believed that Rumsey saw Johnson shoot at the SUV, but discredited her testimony regarding where Johnson was standing at the time. Alternatively, the jury may have concluded that the tinted glass shards found east of the intersection did not fall from the victim's SUV and, thus, were not indicative of where the SUV was positioned when it was struck by the bullet. In any event, the jury was free to accept Rumsey's testimony indicating that she saw Johnson shoot at the SUV and infer that Johnson fired the shot that fatally wounded the victim. Accordingly, there was sufficient evidence to establish that Johnson shot and killed the victim. See *Davis*, 241 Mich App at 700.

## III. EVIDENTIARY RULINGS

Next, Johnson argues that the trial court violated his right to due process when it admitted prejudicial evidence of threatening phone calls and his alleged gang affiliation over defense counsel's objections. We disagree.

Although defense counsel objected to admission of portions of the challenged evidence, the objections failed to preserve this issue for review because the grounds asserted below differ from those pursued on appeal. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review unpreserved claims of evidentiary error under the three-prong test for plain

error. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). "First, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative)." *Id.*

With regard to the evidence of threatening phone calls, Rumsey testified:

> *Q.* All right. And so this whole time he's in jail pending this trial you're still talking to him on the phone, providing him ways so that he can call you, correct?
>
> *A.* Twice I took him a phone card.
>
> *Q.* All right. And at this point in time you're so scared of this man that you're giving him money to call you, is that what you're saying?
>
> *A.* Yes. He calls me regardless. I have so many long distance numbers or out of state numbers from him having people call me constantly.
>
> *Q.* Ma'am, I'm going to object—
>
> [*Defense Counsel*]: Judge, I'm going to ask to strike that. There's no way to prove that she can say that other people are calling her and that he was the one telling them to call her.
>
> *The Witness*: I have text messages—
>
> *The Court*: Hold on.
>
> *The Witness*: —from people saying he did.
>
> *The Court*: Ma'am, don't.
>
> [*Defense Counsel*]: The question was and she answered it, you were still scared even though you were providing him means? And she said yes.
>
> *The Court*: Yes.
>
> [*Defense Counsel*]: Thank you.

Generally, a defendant's threats against a witness are admissible to demonstrate consciousness of guilt. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). This is true, however, only when there is evidence connecting the defendant to the threats. *People v Walker*,

150 Mich App 597, 603; 389 NW2d 704 (1985).[3] Evidence that a witness has been threatened may also be admissible to explain the witness's prior inconsistent statements, as such evidence pertains to the witness's credibility. *People v Johnson*, 174 Mich App 108, 112; 435 NW2d 465 (1989). When offered for that purpose, it is unnecessary that the threat be made by the defendant. See *People v Clark*, 124 Mich App 410, 412; 335 NW2d 53 (1983) (involving threat made by the defendant's brother). See also M Crim JI 3.6 (permitting consideration of "promises, threats, suggestions, or other influences" in assessing witness credibility).

In this case, Rumsey alleged that she felt threatened by several anonymous callers allegedly calling at Johnson's direction. Although Rumsey tenuously connected Johnson to these unspecified threats, the threats were not offered as proof of Johnson's consciousness of guilt. Rather, Rumsey's testimony was offered for the purpose of allowing the jury to assess her credibility, in that her testimony explained her inconsistent stories. Accordingly, it was unnecessary to prove or disprove that Johnson was responsible for the anonymous threatening phone calls and, as such, Rumsey's testimony was admissible for the limited purpose of explaining her inconsistent stories. See *Clark*, 124 Mich App at 412.

Johnson also alleges that the trial court erred in admitting the following testimony offered by TR after he acknowledged that he had not previously testified about Rumsey's involvement after the shooting:

> *Q.* Why didn't you talk about that before, [TR]?
>
> *A.* Because I was scared.
>
> *Q.* What are you scared of?
>
> *A.* I was scared of if I told you guys what would happen, that I would never see my mom again and what would happen if [Johnson]'s friends and people found out about it.
>
> *Q.* What makes you say you're scared of what might happen if [Johnson]'s friends might find out about it?
>
> *A.* Because we—he had told us that he was in like some type of gang—
>
> [*Defense Counsel*]: Objection, your Honor.
>
> *The Court*: On—based on what?

---

[3] Although cases decided before November 1, 1990, are not binding precedent under MCR 7.215(J)(1), they may be considered persuasive authority. *People v Vandenberg*, 307 Mich App 57, 66 n 2; 859 NW2d 229 (2014).

[*Defense Counsel*]:  Based on the fact that it's more prejudicial than anything else.  I mean there's been no independent evidence of that.

*The Court*:  Go ahead.

[*The Prosecution*]:  Thank you.

*Q*.  [TR], let me ask you the question again, okay?

*A*.  Mm-hmm.

*Q*.  What was it that made you afraid . . . of [Johnson] and his friends?

*A*.  He had told us that he was in a gang and most of his friends—well some of his friends and some of his family knew also where we lived.

Similarly, Rumsey testified that she felt threatened by Johnson's references to his "blood brothers."

Evidence concerning the defendant's character is inadmissible when offered to prove action in conformity with that character trait.  MRE 404(a); *People v Bynum*, 496 Mich 610, 624-625; 852 NW2d 570 (2014).  However, evidence of other crimes, wrongs, or acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ."  MRE 404(b)(1).  *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended by 445 Mich 1205 (1994), sets forth the test for the admission of other-acts evidence under MRE 404(b): (1) the evidence must be offered for a proper purpose under MRE 404(b); (2) the evidence must be relevant; and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice.  If the other-acts evidence is admitted, the trial court may provide a limiting instruction to lessen the risk of prejudice.  *Id*.  Relevant evidence is "evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)."  *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000).  Evidence is inadmissible under MRE 404 "if it is relevant *solely* to the defendant's character or criminal propensity."  *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010).

Here, TR and Rumsey did not refer to Johnson's alleged gang affiliation to imply that he acted as a gang member would be expected to act or to otherwise suggest that he had a propensity to commit homicides.  Instead, they testified that Johnson's self-proclaimed gang affiliation left them fearful to accurately relay the events from the night of the shooting, which was why they previously lied to the police and the court.  Although witness credibility is not among the enumerated allowable purposes identified in MRE 404(b), the list of purposes set forth in the evidentiary rule is nonexclusive, *Sabin*, 463 Mich at 56, and it is well-settled that witness credibility is material because it impacts the weight a fact-finder will afford the witness's testimony, *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995), mod by 450 Mich 1212 (1995).  Accordingly, because testimony regarding an individual's gang affiliation is relevant

when it sheds light on a witness's bias or credibility, see *United States v Abel*, 469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984), and the gang-affiliation evidence was not offered as propensity evidence in this case, the challenged evidence satisfies the first and second prongs of the *VanderVliet* test.

Thus, the admissibility of the gang-affiliation evidence rests on the third prong of the *VanderVliet* test: whether the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. *VanderVliet*, 444 Mich at 55. Here, Johnson's defense rested on the notion that he was not the person who shot the victim. Because Rumsey and TR were the only witnesses who were able to link Johnson to the shooting, their credibility was essential to the prosecution's case. Both witnesses admitted that they were untruthful about the relevant events in the past, leaving their credibility indisputably in question. Accordingly, the reason for their prior untruthful statements had significant probative value in determining whether to credit their inconsistent testimony. While we recognize that evidence of gang membership undoubtedly presents a risk of an improper character-to-conduct inference, we cannot conclude that the risk of unfair prejudice *substantially* outweighed the probative value of the evidence in this case. See *Bass*, 317 Mich App at 259 ("MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so.") (quotation marks and citation omitted). Accordingly, the trial court did plainly err by allowing Rumsey and TR to refer to Johnson's alleged gang affiliation in explaining why they were fearful to implicate Johnson in the shooting.

## IV. SENTENCING

Johnson next argues that the trial court erred in calculating his offense variable (OV) score[4] and by imposing the maximum sentence allowable for manslaughter. We agree.

This Court reviews the reasonableness of a sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). "Generally, an appellate court defers to the trial court's judgment, and if the trial court's decision falls within the range of principled outcomes, it has not abused its discretion." *People v Cross*, 281 Mich App 737, 739; 760 NW2d 314 (2008). In considering an alleged scoring error, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

During sentencing, the trial court determined that Johnson's total OV score was 105 points, placing him at OV Level 6. MCL 777.16p; MCL 777.64. Johnson's total OV score included 25 points for OV 6, which relates to "the offender's intent to kill or injure another

---

[4] Although Johnson's scoring challenge is relevant to the balance of his claim of error regarding his sentencing, he acknowledges that the scoring error would not serve as an independent basis for granting appellate relief. See *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

individual," and directs the trial court to score the variable, in pertinent part, as follows:

> Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> *  *  *
>
> > (b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result ................... 25 points
> >
> > (c) The offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life ............... 10 points
> > [MCL 777.36(1)(b) and (c).]

Pursuant to MCL 777.36(2)(a), "[t]he sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury."

Rather than rely on Johnson's manslaughter verdict, the trial court looked to the facts of the case to determine the appropriate number of points to assign to OV 6. The trial court explained that, based on the facts, the act was not premeditated, but "there was clearly intent to do great bodily harm or [to] create a very high risk of death or great bodily injury knowing that that was the probable result." Accordingly, the trial court did not reduce the points assessed under OV 6 to 10 points. Taking Johnson's prior record variable score of 32 points into account, which he does not contest on appeal, the sentencing guidelines recommended a minimum sentence of 50 to 100 months' imprisonment for Johnson's manslaughter conviction. MCL 777.64. The trial court imposed a departure sentence of 10 to 15 years' imprisonment—the maximum sentence permitted under MCL 769.34(2)(b).[5]

Johnson first argues that the trial court erred in failing to score OV 6 at 10 points. We agree. There is no indication in the record that the trial court relied on information that was not presented to the jury when it decided to assess 25 points for OV 6 on the basis of Johnson's alleged intent to do great bodily harm or create a high risk of death or great bodily injury. As such, MCL 777.36(2)(a) mandated that the trial court was required to assess only 10 points for OV 6, consistent with the jury's verdict. The trial court erred by failing to do so. However, as Johnson concedes, this adjustment would not have affected his OV level or the minimum sentence range recommended by the guidelines. Therefore, the trial court's scoring error does

---

[5] The trial court also imposed a consecutive, two-year term of imprisonment for Johnson's felony-firearm conviction, which he does not challenge on appeal.

not serve as an independent basis for resentencing. See *People v Carpenter*, 322 Mich App 523, 532; 912 NW2d 579 (2018),[6] citing *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

Johnson next argues that the trial court abused its discretion in sentencing Johnson to the maximum allowable term of imprisonment for manslaughter. We agree.

Although the sentencing guidelines are only advisory, the trial court must consult them in making a sentencing determination. *Steanhouse*, 500 Mich at 470. The test to determine the reasonableness of a sentence is "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. at 475 (quotation marks and citation omitted). Under all circumstances, the sentence imposed must be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted).

Johnson cites *People v Fortson*, 202 Mich App 13; 507 NW2d 763 (1993), in support of his argument that the trial court abused its discretion in sentencing him on the basis of the trial court's belief that Johnson was guilty of second-degree murder. In *Fortson*, this Court vacated the defendant's sentence and remanded because "the trial court erred in making an independent finding that defendant was guilty of first-degree premeditated murder as a reason for justifying the sentence imposed, in direct contravention of the jury's verdict of voluntary manslaughter." *Id*. at 21. Johnson also cites *People v Milbourn*, 435 Mich 630, 654; 461 NW2d 1 (1990), for the proposition that a trial court is not justified in imposing the maximum term under the guidelines where "a given case does not present a combination of circumstances placing the offender in . . . the most serious . . . class with respect to that particular crime . . . ."

In this case, we can infer from the trial court's assessment of 25 points for OV 6 that the court believed that Johnson was guilty of second-degree murder, despite the jury's acquittal with respect to that alternative charge. Whether the trial court's disagreement with the verdict reached by the jury was the basis for its decision to depart from the sentencing guidelines' recommendation and impose the maximum allowable sentence is unclear from the existing record. In explaining the reason for the departure sentence, the trial court merely stated that it was "individualizing" Johnson's sentence, taking "punishment, rehabilitation prospects, deterrence, [and] protection of society," into consideration. While the trial court is no longer required to articulate substantial and compelling reasons for departing from the guidelines, it is still obligated to "justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017), oral argument on application gtd 501 Mich 1066 (2018) (quotations and citation omitted). The trial court's rote recitation of "factors" it considered in this case does not satisfy its obligation to justify the extent of its departure, as we can discern no basis on which these factors applied to Johnson or the sentencing offense. Accordingly, we agree that Johnson is entitled to resentencing for his manslaughter conviction.

---

[6] An application for leave to appeal in *Carpenter* was filed with the Supreme Court on February 20, 2018, and remains pending at this time.

-10-

## V. DOUBLE JEOPARDY

Johnson next argues, in his Standard 4 brief, that his trial in this case was barred by the Double Jeopardy Clause. We disagree.

A defendant who challenges his convictions on double jeopardy grounds must preserve the issue for appellate review by raising it before the trial court. See *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). Because Johnson failed to do so, this issue is unpreserved. "However, a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *Id.* We review unpreserved issues for plain error affecting substantial rights. *Id.* "Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

The United States and Michigan Constitutions protect a defendant from twice being placed in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15. "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). As our Michigan Supreme Court explained in *People v Dawson*, 431 Mich 234, 251; 427 NW2d 886 (1988): "An accused is placed in jeopardy as soon as the jury is selected and sworn. Hence, double jeopardy protection attaches before the conclusion of the trial. Where the trial ends before a verdict—where a mistrial is declared—the Double Jeopardy Clause may bar a retrial." However, the Double Jeopardy Clause does not bar *all* retrials. The charged offense may be retried "where the mistrial was declared because of a hung jury" or "where the prosecutor or judge made an innocent error." *Id.* at 252. Where the defendant moves for a mistrial as a result of innocent conduct on the part of the prosecutor, "retrial is also generally allowed, on the premise that by making or consenting to the motion the defendant waives the double jeopardy claim." *Id.* at 253. However, the Double Jeopardy Clause bars retrial where prosecutorial conduct was "intended to provoke the defendant into moving for a mistrial." *Id.*

During Johnson's first trial,[7] the prosecution introduced video recordings of Rumsey's interviews with Detective Rose. After a portion of the second interview was played for the jury, the prosecution requested that the jury be excused from the courtroom so the prosecution team could review and redact the video, in an attempt to avoid playing any content that was inappropriate for the jury's consideration. However, despite redacting numerous other improper references, the version of the video played included a statement regarding Johnson's previous incarceration. Johnson objected and, although the prosecution argued that the trial court could issue a curative instruction to the jury, the trial court declared a mistrial. Despite noting that the

---

[7] As explained earlier, Johnson's second trial ended when the jury was unable to reach a unanimous verdict. Johnson does not contend that the second mistrial barred a subsequent retrial.

prosecution held the video in its possession for a considerable time and should have edited it in advance, the trial court found that the conduct of the prosecution was unintentional.

We conclude that Johnson has failed to establish that the trial court's erred in this regard. Johnson suggests that the prosecution's case was not going well and that the prosecution was therefore motivated to provoke Johnson into moving for a mistrial. However, the trial court was well aware of the status of the case and was in the best position to judge the credibility of the individuals involved when it expressly found that the prosecution's error was "just an oversight, nothing intentional on their part." Because the trial court did not clearly err in finding that the prosecution's failure to properly redact the video was inadvertent, *id*. at 258, Johnson has failed to establish plain error with respect to his double-jeopardy challenge, *McGee*, 280 Mich App at 682.

## VI. JUROR IMPARTIALITY

Lastly, Johnson argues in his Standard 4 brief that the trial court abused its discretion in failing to sua sponte dismiss "Juror 13" from the jury panel and that defense counsel rendered ineffective assistance of counsel by failing to further question the juror to uncover potential bias, failing to excuse the juror for cause, and failing to exercise a peremptory challenge against the juror. We disagree.

### A. TRIAL COURT'S FAILURE TO SUA SPONTE DISMISS A JUROR

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Johnson did not move to excuse Juror 13 from the jury for cause and did not exercise a peremptory challenge against Juror 13's continued service on the jury. Given Johnson's failure to object to Juror 13's service on the jury, this issue is unpreserved for appellate review. We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"A defendant who chooses a jury trial has an absolute right to a fair and impartial jury. The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994) (citations omitted). MCR 2.511(D) provides several grounds that justify a challenge to a potential juror for cause, including that the potential juror (1) "is biased for or against a party or attorney"; (2) "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be"; or (3) "has opinions or conscientious scruples that would improperly influence the person's verdict[.]" MCR 6.412(D)(2) provides that "[i]f, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." Similarly, MCL 600.1337 states that "[w]hen the court finds that a person in attendance at court as a juror is not qualified to serve as a juror, . . . the court shall discharge him or her from further attendance and service as a juror." Finally, MCL 600.1354(1) states, in pertinent part:

Failure to comply with the provisions of this chapter shall not . . . affect the validity of a jury verdict unless the party . . . claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial.

"Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001).

Johnson argues that Juror 13 equivocated about whether she could be impartial. The record indicates that Juror 13 admitted that she had lied at some point in her life and that she could therefore understand and sympathize with another person who might have done the same. Juror 13 also stated that she "would do [her] best to be impartial," but added that she could not guarantee how she would view testimony offered by a witness who had previously lied or failed to tell the entire truth. We do not agree that Juror 13's answers provided grounds for the juror's removal for cause pursuant to MCR 2.511(D).[8] Nor can Johnson demonstrate actual prejudice as required by MCL 600.1354(1). Jurors are " 'presumed to be . . . impartial, until the contrary is shown,' " and the "burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (citation omitted). In this case, Johnson has offered no evidence that Juror 13 was actually biased, other than her statement that she could not guarantee how she would view the testimony of a witness who previously lied about the same subject. Because Johnson has not shown that Juror 13's impartiality is in reasonable doubt, he is not entitled to relief on this issue.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, because Johnson failed to preserve this issue by moving for a new trial or evidentiary hearing in the trial court, our review "is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

A defendant raising a claim of ineffective assistance of counsel must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "Effective assistance of counsel is presumed,

---

[8] In this case, the trial court excused several jurors for cause because they expressed bias or indicated that they had formed a positive opinion on the facts of the case or on what the outcome should be. The record in this case clearly demonstrates that the trial court was not reticent to dismiss jurors for cause.

and the defendant bears a heavy burden of proving otherwise." *Solmonson*, 261 Mich App at 663. In doing so, a defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. *People v Knapp*, 244 Mich App 361, 385-386; 624 NW2d 227 (2001). This is particularly true in the context of jury selection because counsel's strategic decisions are often fueled by a prospective juror's nonverbal cues, which a transcribed record cannot accurately convey to the reviewing court. See *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (explaining this Court's disinclination to find ineffective assistance of counsel based upon an attorney's failure to challenge a juror).

In this case, Johnson complains that Juror 13 equivocated about whether she could believe a witness who had lied in the past, or whether she would automatically assume that the person was lying again. The only witnesses to whom this scenario applied were Rumsey and TR, the primary prosecution witnesses. Rumsey previously testified in proceedings against Johnson, and at the time of Johnson's trial, was charged with perjury and being an accessory after the fact. On cross-examination, defense counsel pointed out that Rumsey had committed perjury on nine different occasions before testifying at trial. TR, likewise, admitted that he provided incomplete and untruthful testimony at Johnson's earlier trials. It is apparent from the record that defense counsel's trial strategy involved significant criticism of TR's and Rumsey's veracity as witnesses.

"[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). Considering the facts of this case, defense counsel could reasonably have decided not to challenge Juror 13, either for cause or peremptorily, because she might have been likely to distrust the inconsistent testimony offered by the prosecution's primary witnesses. Because this is within the range of possible reasons that defense counsel may have had for not challenging the juror's impartiality, we cannot say that defense counsel's failure to challenge the juror fell outside the wide range of professionally competent assistance. Moreover, even if defense counsel had other reasons for not challenging Juror 13, "[a] lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury," *Unger*, 278 Mich App at 258 (quotation marks and citation omitted), and Johnson has not demonstrated that counsel's decision in this regard was anything other than a sound trial strategy.

VII. CONCLUSION

We affirm Johnson's convictions, but vacate the sentence imposed for his manslaughter conviction and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica