*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

OWEN ORON MARTIN,

        Defendant-Appellant.

UNPUBLISHED
November 30, 2023

No. 362470
Wayne Circuit Court
LC No. 20-004363-01-FC

Before: O'BRIEN P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Owen Martin, appeals as of right his convictions, following a jury trial, of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b. The trial court sentenced Martin as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without parole for the murder conviction and 10 to 20 years in prison for the felon-in-possession conviction, to be served concurrently, but consecutive to concurrent five-year terms of imprisonment for the felony-firearm convictions. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On June 23, 2020, Sylvone Crosby arrived home with his girlfriend, Mia Jones. He was confronted by a man wearing a facemask. The man shot Crosby dead and fled in a sport utility vehicle. The key issue at trial was the identity of the shooter.

Jones, who witnessed the shooting, identified Martin as the shooter to the police who responded to the scene. She also showed the officers a photograph of Martin on his Facebook page. Jones had known Martin for several years. She testified that Crosby and Martin had also known each other for many years, and that they were feuding at the time of the shooting because Martin believed that Crosby was a "rat" or a "snitch." Video footage from a house in the neighborhood showed the shooter leaving in a sports utility vehicle. One of the officers recalled stopping a sport utility vehicle about two weeks before the shooting that matched or was similar to the vehicle the shooter used to leave the scene. The police were able to retrieve bodycam footage

of the traffic stop of that vehicle, which involved Martin. The prosecution maintained that Martin's identity as the shooter was supported by both Jones's identification testimony and the previous traffic stop that connected Martin to the vehicle used in the shooting.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Martin argues that the evidence was insufficient to prove his identity as the shooter. "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

### B. ANALYSIS

Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a single witness can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*.

At trial, Jones identified Martin as the shooter. Martin argues that Jones's testimony was insufficient to establish his identification beyond a reasonable doubt because Jones appeared hesitant in her identification testimony at trial. He emphasizes that Jones testified that she "assumed" that he was the shooter, and that while Jones agreed that the shooter had dreadlocks like Martin, she also stated that "all dreads kind of look-alike." That was not, however, the only identification evidence. Rather, Jones testified that she had known Martin for several years. And she acknowledged that at the preliminary examination she had testified that she called out Martin's nickname, "OJ," when she saw him shooting Crosby. In addition, shortly after the shooting, Jones identified Martin as the shooter to the police and showed the police a photograph of Martin from his Facebook page. It was up to the jury to determine the weight and credibility of Jones's identification testimony at trial and the jury reasonably could have found that Jones's familiarity with Martin and her identification of him as the shooter at the time of the shooting enhanced the reliability of her identification testimony at trial.

Martin's identification as the shooter was also bolstered by the evidence that Martin had a motive for the murder because he and Crosby, who had known each other for many years, were "beefing" because Martin believed that Crosby was a "snitch." Further, evidence was presented that a few weeks before the shooting, officers conducted a traffic stop of a vehicle that Martin was driving, and that vehicle matched the description of the vehicle used by the shooter after Crosby was slain. The prosecutor's theory was that Martin's connection to a vehicle that resembled the vehicle used by the shooter further supported his identity as the shooter. Although there were questions about the model and color of the vehicle that Jones saw the shooter use to leave the scene, these too were questions for the jury to consider in weighing the weight and strength of the evidence.

In sum, Jones's identification testimony at trial, the evidence of her identification of Martin as the shooter during and immediately after the shooting, and the evidence linking Martin to a vehicle that matched the description of the vehicle used by the shooter, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that Martin was responsible for the charged offenses.

## III. EVIDENTIARY CHALLENGES

### A. STANDARD OF REVIEW

Martin argues that the trial court erred by allowing Jones to testify that she had received threats related to this case. He contends that such testimony was inadmissible hearsay, irrelevant, violated his constitutional right of confrontation, and should have been excluded under MRE 403. To preserve an evidentiary issue for appeal, a party must object at trial on the same ground that it presents on appeal. *People v Lowery*, 342 Mich App 99, 108; 993 NW2d 62 (2022). Martin objected only on the grounds that Jones's testimony was hearsay and irrelevant. Therefore, his appellate challenges on these grounds are preserved, but his contention that the testimony was unduly prejudicial or violated his constitutional right of confrontation are unpreserved. This Court reviews a trial court's decision to admit evidence for an abuse of discretion, but any preliminary questions of law are reviewed de novo. *Id*. An abuse of discretion occurs when a trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Galloway*, 335 Mich App 629, 637; 967 NW2d 908 (2020). An unpreserved claim of evidentiary error is reviewed for plain error that affects a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The defendant has the burden of demonstrating that he was prejudiced by the error by showing that the error affected the outcome. *Id.*

### B. ANALYSIS

#### 1. HEARSAY

"Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007); MRE 801(c). Under MRE 802, hearsay is not admissible unless it falls under one of the hearsay exceptions found in the Michigan Rules of Evidence. However, "[a]n out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014). "Such statements are not offered for a hearsay purpose because their value does not depend upon the truth of the statements." *Id*. (quotation marks, citation, and brackets omitted). Accordingly, threats are not hearsay when introduced to show something other than the truth of the substantive contents of the threat, such as the effect on the listener or to attack credibility. *People v Martinez*, 507 Mich 855, 855 (2021).[1]

---

[1] Orders from our Supreme Court are binding if they are a final disposition of an application containing a concise statement of the applicable facts and the reason for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

In this case, although Jones testified that she received communications that she characterized as threats, she did not reveal the substance of the communications on direct examination. Because this testimony did not reveal the substance of any out-of-court statement, there was no hearsay violation. On cross-examination, Jones revealed that the communications involved "people calling me snitches and stuff." To the extent that this testimony revealed the substance of an out-of-court statement, it was elicited by Martin's lawyer. Moreover, it was not offered to prove the truth of the matter asserted, i.e., it was not offered to prove that Jones was a snitch. Further, the prosecution introduced this evidence to show its possible influence of Jones's trial testimony. Indeed, Jones admitted that she was reluctant to testify and she hesitated in identifying Martin at trial. Thus, the testimony regarding threats was admitted for a nonhearsay purpose, so it was not inadmissible hearsay.

## 2. CONFRONTATION CLAUSE

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right. .. to be confronted with the witnesses against him. .. ." US Const, Am VI; see also Const 1963, art 1, § 20. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *Yost*, 278 Mich App at 370 (quotation marks and citation omitted). The Confrontation Clause bars the use of a witness's testimonial statements if the witness is unavailable for trial unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

In *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007), this Court explained:

> [T]he Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. [Citations omitted.]

Here, the prosecutor did not ask Jones about the substance of any threats, but only whether she received any threats. Further, the prosecutor elicited this testimony to show its effect on Jones, who—as noted above—admitted that she did not want to testify at trial and hesitated at trial in identifying Martin as the shooter. Therefore, the admission of this testimony did not violate Martin's right of confrontation because it was offered to show the effect on the listener, not to prove the truth of the matter asserted.

## 3. RELEVANCY

Threats made by a defendant against a witness may be relevant as evidence of consciousness of guilt. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). Martin correctly observes that there was no evidence directly connecting him to the threats. Although evidence linking a threat to the defendant is generally necessary where the evidence is offered to show a defendant's consciousness of guilt, *People v Walker*, 150 Mich App 597, 603; 389 NW2d 704 (1985), the evidence here was not offered for that purpose. Rather, a jury properly may consider the impact of threats or other influences that may affect a witness's credibility. See M

Crim JI 3.6(3)(f) (when evaluating a witness's credibility, a jury may consider "and promises, threats, suggestions, or other influences that affected how the witness testified"). Here, as previously explained, Jones did not want to be in court and only hesitantly identified Martin as the shooter. During closing argument, the prosecutor did not refer to the evidence of threats in the context of arguing that they demonstrated Martin's consciousness of guilt, but only in the context of explaining Jones's apparent nervousness while testifying. The trial court did not abuse its discretion by determining that the evidence was relevant to its possible influence on Jones's testimony.

## 4. UNFAIR PREJUDICE

Lastly, Martin has not demonstrated that this testimony should have been excluded under MRE 403 because its probative value was substantially outweighed by its prejudicial effect. This evidence had significant probative value considering Jones's admission that she did not want to testify and her hesitancy in identifying Martin at trial compared to her previous identifications of him as the shooter both at the scene and during the preliminary examination. Moreover, the testimony was not unduly prejudicial, particularly considering that Jones admitted that there was no evidence connecting the threats to Martin.

## IV. UNRESPONSIVE TESTIMONY

## A. STANDARD OF REVIEW

Next, Martin argues that a new trial is required because, while testifying, Jones referred to the fact that he was incarcerated. Because Martin did not object at trial, this issue is unpreserved and our review is for plain error affecting Martin's substantial rights. See *Carines*, 460 Mich at 763.

## B. ANALYSIS

In response to a question as to whether she had received any threats associated with Martin's case, Jones first responded that she had received "threats and calls" from unknown individuals and, after being asked to repeat her testimony because the judge did not hear it, she stated, "I said I got calls and, like, threats. I don't know, you know, who they were from because obviously he was in jail or something so I don't know who they were from."

It is improper to offer evidence that a defendant was previously incarcerated. *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983); *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007). The prosecution concedes that Jones's reference to Martin being in jail was improper. The error, however, did not affect Martin's substantial rights. The comment regarding Martin's incarceration was made as part of an unresponsive, volunteered answer to an otherwise proper question, which generally does not impair a defendant's ability to receive a fair trial. See *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009). This is particularly true when the prosecutor did not know in advance that the witness would provide the unresponsive answer or the prosecutor did not encourage the challenged response. *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990).

In this case, the prosecutor took steps to keep Jones from mentioning that Martin had previously been in prison by instructing her before she testified that she was not to mention Martin's prior imprisonment. Her reference to Martin's incarceration involved a volunteered and unresponsive answer to a question that merely asked if she had been contacted by anyone about this case. Further, the remark was brief and isolated, and the parties immediately moved onto another topic. Additionally, the brief remark did not actually refer to Martin's prior imprisonment, but referred to Martin being in jail when the threats related to this case were received and the jury was already aware that Martin had been charged with first-degree murder in the case. Finally, because of the felon-in-possession charge, the jury was already aware that Martin was a convicted felon.

In sum, considering that Jones's comment about Martin being in jail was volunteered, brief, and isolated, and that the jury was aware from other evidence that Martin was a convicted felon and had been charged with first-degree murder in this case, the improper testimony did not affect Martin's substantial rights. Reversal is, therefore, not required.

## V. COURT COSTS

### A. STANDARD OF REVIEW

Martin challenges the trial court's assessment of $1,300 in court costs under MCL 769.1k(1)(b)(*iii*), arguing that the statute is unconstitutional. Because he did not object to the assessment of costs below or otherwise raise this issue before the trial court, the issue is unpreserved and our review is limited to plain error affecting Martin's substantial rights. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

### B. ANALYSIS

Martin argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional because it (1) infringes on his due-process right to appear before an impartial judge by incentivizing trial court judges to convict defendants in order to impose costs to raise money to fund the courts, and (2) violates the separation of powers because the funding arrangement created by the statute prevents the judicial branch from accomplishing its constitutionally assigned functions of maintaining impartiality in criminal proceedings. These arguments have already been considered and rejected by this Court. *People v Johnson*, 336 Mich App 688, 693-705; 971 NW2d 692 (2021); *People v Cameron*, 319 Mich App 215, 228-229, 231, 235; 900 NW2d 658 (2017). Accordingly, the trial court's assessment of $1,300 in court costs was not plain error.

## VI. STANDARD 4 BRIEF

Martin raises additional issues in a pro se brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. We address each in turn.

### A. PROSECUTORIAL MISCONDUCT

Martin argues that the prosecutor made several improper remarks during the opening statement and closing arguments, but he did not object to any of the challenged remarks at trial. Therefore, his claims are unpreserved. As noted, an unpreserved claim of prosecutorial

misconduct is reviewed for plain error affecting the defendant's substantial rights. *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). Prosecutors are permitted to argue the evidence and reasonable inferences arising from the evidence in support of their theory of the case. *Id*. at 282. Although, prosecutors must refrain from making prejudicial remarks, they are not required to phrase their arguments in the blandest of terms, and may use hard language when the evidence supports it. *Id*.

Martin challenges the prosecutor's remarks in his opening statement that Jones was present during the shooting and would identify Martin as the shooter. This was consistent with the testimony that Jones later gave at trial. Accordingly, the remarks were not improper. Similarly, there is no merit to Martin's argument that the prosecutor's remarks during closing argument misstated that Jones had identified Martin as the shooter. Jones identified Martin as the shooter, both at the crime scene and during trial. All of the challenged remarks were proper comments on the evidence and reasonable inferences arising from the evidence. To the extent that Jones's identification testimony was impeached, the weight and credibility of her testimony was for the jury to decide. Martin has not demonstrated any plain error associated with any of the prosecutor's remarks.

## B.  JURY REQUEST

Next, Martin argues that reversal is required because the trial court erroneously responded to the jury's request during deliberations for trial and preliminary examination transcripts of Jones's testimony. After advising the lawyers of how it planned to respond to the jury's request and receiving no objection, the trial court responded to the jury's request on the record as follows:

*THE COURT*:  The jury is present and properly seated and asked the following questions:

Question.  Can we see the transcript of Mia Jones' testimony from the preliminary hearing and this trial?

First, there is no transcript of the trial that is yet prescribed or written up.

Second, the transcript from Mia Jones' preliminary examination is not in evidence except parts already used in questions to her at this trial.

You are to rely on the deliberation of all 12 jurors.

Please step back into the jury room and continue your deliberations.

(*At 12:31 p.m. jury excused*)

*THE COURT*:  People satisfied?

*MR*. *DREHER*:  Yes, your Honor.  Thank you.

*THE COURT*:  Defense satisfied?

*MR. BLAKE*:  Yes, your Honor.

*THE COURT*:  Okay.

Any error with regard to this issue was waived when Martin's lawyer expressly declined to object to the trial court's proposed response to the jury's questions, and thereafter expressed satisfaction with the response given.  A waiver occurs when a defendant affirmatively approves a jury instruction as read by the court.  *People v Jackson (On Reconsideration)*, 313 Mich App 409, 420; 884 NW2d 297 (2015).  A waiver extinguishes any error and leave no error to review.  *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).  Accordingly, this issue is waived.

## C.  TELEPHONE TESTIMONY

Martin argues that he was denied his right of confrontation when the trial court allowed Jerome Smolinski to testify by telephone.  Because Martin did not preserve this issue by objecting to Smolinski's appearance by telephone, we review this issue for plain error affecting his substantial rights.  *Carines*, 460 Mich at 763.

The Sixth Amendment's right of confrontation requires face-to-face examination for testimonial evidence unless a witness is unavailable and the defendant had a prior opportunity for cross-examination.  *People v Jemison*, 505 Mich 352, 356; 952 NW2d 394 (2020).  However, this right may be waived, including by the defendant's lawyer without the defendant's personal consent.  *People v Buie*, 491 Mich 294, 315; 817 NW2d 33 (2012).  Moreover, MCR 6.006(A) and (B) authorize the use of videoconferencing technology, including telephonic technology, in criminal proceedings, subject to a defendant's opportunity to raise objections.  In this case, none of the parties objected to Smolinski being allowed to testify by telephone.  Smolinski was a witness only because Crosby's body was found in his backyard after Smolinski heard some gunshots and because Smolinski called 911.  Such matters were not disputed.

Martin contends that he told his lawyer to object to Smolinski testifying by telephone, but his lawyer told him that he was not going to object.  Martin, therefore, requests that this Court remand this matter for an evidentiary hearing to further develop the record on this issue.  However, even if Martin could show that there was no valid waiver of Smolinski's personal appearance at trial, appellate relief would not be warranted because Martin cannot demonstrate that he was prejudiced by the absence of an opportunity for a face-to-face examination of Smolinski.  *Carines*, 460 Mich at 763.  The significance of the requirement of a face-to-face confrontation is that it allows the jury to observe the demeanor of a witness while testifying to assist the jury in evaluating the witness's credibility.  In this case, Smolinski's credibility was not significant because he did not offer testimony regarding any disputed matter.  Accordingly, Martin is not entitled to appellate relief with respect to this issue, nor is there a need to remand for further development of the record.

## D.  INEFFECTIVE ASSISTANCE

Martin asserts that he is entitled to a new trial because his lawyer was ineffective.  Because the trial court did not hold an evidentiary hearing, our review is limited to errors apparent from the

record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance, the defendant must first establish that his lawyer's performance was deficient, which involves consideration "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022) (quotation marks and citation omitted). The defendant must also demonstrate that he was prejudiced by his lawyer's error. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 637 (quotation marks and citation omitted). "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). The defendant has the burden of establishing the factual predicate for his ineffective-assistance claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Martin argues that his lawyer was ineffective for failing to investigate and call two alibi witnesses. Martin's first lawyer attempted to investigate the proposed alibi witnesses, but they were not cooperative. Martin later retained a new lawyer who requested additional time to file a witness list, but later advised the court that Martin did not anticipate calling any witnesses. While it is not apparent from the record whether Martin second lawyer contacted either of the proposed alibi witnesses, Martin has not submitted an affidavit from either witness showing the substance of their proposed testimony.[2] Without an appropriate offer of proof showing the substance of their proposed testimony, Martin cannot demonstrate that he was prejudiced by the failure to call the witnesses, nor can he demonstrate factual support for this claim to justify remand for an evidentiary hearing with respect to this issue. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

Next, Martin argues that his lawyer was ineffective for not objecting to Smolinski's appearance by telephone. Yet, it appears from the record that Martin's lawyer was willing to allow Smolinski to testify by telephone because Smolinski had a number of health issues. More significantly, even though Martin's right to confront this witness was at stake, and the opportunity for a face-to-face confrontation of a witness is an important aspect for evaluating a witness's credibility, Smolinski, as noted earlier, did not offer any testimony regarding any disputed matter in the case. Under these circumstances, Martin has not overcome the presumption that his lawyer's decision was a matter of trial strategy. Rather, his lawyer appears to have reasonably believed that a face-to-face confrontation was not necessary because Smolinski's credibility was not significant to the case. Further, Martin cannot demonstrate that he was prejudiced by the absence of a face-to-face confrontation where Smolinski did not testify regarding any disputed matter for which his credibility might be significant.

Martin also argues that his lawyer was ineffective for not objecting to the court's response to the jury's request for transcripts of Jones's preliminary examination and trial testimony. However, in denying the request, the trial court only indicated that the transcripts had not yet been

---

[2] Although Martin's Standard 4 brief refers to an affidavit from McKinney, no affidavit was filed with the Standard 4 brief, Martin's motion to remand in this Court, or Martin's motions filed in the trial court.

prepared. Thus, the trial court did not foreclose the jury from renewing its request at a later time, and the court's response was not otherwise erroneous. Thus, any objection would have been futile. A lawyer is not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182-183; 577 NW2d 903 (1998).

Martin additionally argues that his lawyer was ineffective for not objecting to the prosecutor's remarks in opening statement and closing argument that are discussed earlier in this opinion. However, because we have concluded that none of the remarks were improper, Martin's lawyer was not ineffective for failing to object.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly